ORIGINAL

1   JENNIFER LEE TAYLOR (BAR NO. 161368)
    COLETTE R. VERKUIL (BAR NO. 263630)
2   WHITNEY MCCOLLUM (BAR NO. 253039)
    MORRISON & FOERSTER LLP
3   425 Market Street
    San Francisco, CA 94301
4   Telephone: 415-268-7000
    Facsimile: 415-268-7522         *E-filing*
5
    Attorneys for Plaintiff
6   UBIQUITI NETWORKS, INC.

7

8                  UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  UBIQUITI NETWORKS, INC., a Delaware     )   Case No.: **12   2582**
    corporation,                           )
12                                          )
                       Plaintiff,           )   Judge ___
13                                          )
                                            )   **COMPLAINT IN SUPPORT OF**
14         vs.                              )   **PLAINTIFF'S EX PARTE**
                                            )   **APPLICATION FOR TEMPORARY**
15  KOZUMI USA CORP., a Florida corporation; )  **RESTRAINING ORDER**
    SHAO WEI HSU; LILIA KUNG; DOES ONE     )
16  THROUGH ONE HUNDRED.                    )
                                            )   **JURY TRIAL DEMANDED**
17                     Defendants.          )
                                            )
18

19         Plaintiff Ubiquiti Networks, Inc. ("Plaintiff" or "Ubiquiti") brings this complaint against

20  Defendants Kozumi USA Corp. ("Kozumi"), Shao Wei Hsu ("Mr. Hsu"), Lilia Kung ("Ms.

21  Kung") (collectively, "Defendants"), and Does One through One Hundred and alleges as follows:

22                          **PRELIMINARY STATEMENT**

23         1.      Defendants are masterminding an international counterfeiting scheme to profit

24  illegally from Ubiquiti's established trademarks and goodwill in the wireless and networking

25  technology markets.  Using stolen source code and proprietary designs, Defendants have been

26  manufacturing millions of dollars' worth of counterfeit Ubiquiti products, packaging them in

27  boxes that are virtually identical to genuine Ubiquiti packaging, and selling them to unsuspecting

28

1  customers throughout the world. These customers are deceived into believing that they are

2  purchasing genuine Ubiquiti products when they are actually buying substandard counterfeit

3  goods. The availability of these counterfeit products in the marketplace is causing substantial

4  harm to the Ubiquiti brand and needs to be stopped immediately.

5  **THE PARTIES**

6  2.      Ubiquiti is a Delaware corporation with its principal place of business at

7  91 E. Tasman Drive, San Jose, CA 95134. Ubiquiti designs, develops and offers for sale under

8  the UBIQUITI mark a wide variety of equipment used in wireless communications, including

9  receivers, transmitters, routers, and antennas, as well as software used to operate the devices.

10  3.      On information and belief, Defendant Kozumi USA Corp. is a Florida corporation

11  with its principal place of business at 6960 NW 50th Street, Miami, FL 33166. Defendant

12  Kozumi USA Corp. is a former distributor of genuine Ubiquiti products. On information and

13  belief, Defendant Kozumi USA Corp. continues to distribute equipment used in wireless

14  communications, including counterfeit Ubiquiti products.

15  4.      On information and belief, Defendant Shao Wei Hsu (who also goes by the names

16  William Wu Hsu, William Hsu Wu, and Guillermo Hsu, among others), is a Brazilian citizen who

17  resides in and conducts business at or near 3005 Hartridge Terrace in Wellington, Florida.

18  Mr. Hsu is the founder, sole owner and director of Kozumi.

19  5.      Upon information and belief, Defendant Lilia Kung is a Brazilian citizen who

20  resides or does business at or near 3005 Hartridge Terrace in Wellington, Florida. Upon

21  information and belief, Ms. Kung is Mr. Hsu's wife.

22  6.      Ubiquiti is ignorant of the true names and capacities of defendants sued as Does

23  One through One Hundred, inclusive, and, for that reason, sues these defendants by their fictitious

24  names. When the true names and capacities of these defendants have been ascertained, Ubiquiti

25  will seek leave of Court to amend this complaint accordingly.

26  **JURISDICTION AND VENUE**

27  7.      This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121 (action

28  arising under the Lanham Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (any

1     Act of Congress relating to trademarks); 28 U.S.C. § 1367 (supplemental jurisdiction); and the

2     U.S. copyright laws, 17 U.S.C. § 101, *et seq*.

3           8.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) because

4     Ubiquiti's principal place of business is within this district and Ubiquiti transacts business within

5     this district. Ubiquiti has suffered harm in this district, and the Lanham Act provides that venue

6     lies in the place of harm to the plaintiff.

7           9.      This Court has personal jurisdiction over the Defendants (under the Lanham Act)

8                               **ALTER EGO ALLEGATIONS**

9           10.     Plaintiff alleges on information and belief that there exists, and at all times

10    relevant herein existed, a unity of interest and ownership between Defendants Hsu and Kung

11    (collectively, "the Individual Defendants") and Kozumi, such that any individuality and

12    separateness between the Individual Defendants and Kozumi has ceased.

13          11.     Plaintiff is informed and believes, and there upon alleges that the Individual

14    Defendants have improperly managed, controlled, and dominated Defendant Kozumi, as their

15    alter ego, agent and instrumentality.

16          12.     On information and belief, Kozumi was established, and has at all relevant times

17    been run and operated, by Hsu.

18          13.     On information and belief, Kozumi has never issued public shares and is a closely-

19    held corporation owned entirely by Hsu.

20          14.     Kozumi distributes wireless hardware devices and otherwise conducts business

21    under the direction of the Individual Defendants and individuals acting on their behalf.

22          15.     On information and belief, the day-to-day operations of Kozumi are inextricably

23    intertwined with those of the Individual Defendants. The corporate entity is the mere

24    instrumentality which, on information and belief, is controlled entirely by the Individual

25    Defendants. Kozumi, on the one hand, and the Individual Defendants, on the other hand, are alter

26    egos of one another.

27          16.     Plaintiff is informed and believes, and thereupon alleges that the conduct of the

28    Individual Defendants in holding all or substantially all of Kozumi's assets as their alter ego,

1  agent and/or instrumentality constitutes abuse of the corporate privilege, through which the

2  Individual Defendants seek inequitable advantage based on the fiction of separate existence.

3       17.    Adherence to the fiction of the separate existence of the Individual Defendants and

4  Kozumi with regard to this action would promote injustice because of the allegations set forth

5  above.  Accordingly, the Individual Defendants are jointly and severally liable for the damages

6  incurred by Kozumi, as alleged below.

7  **FACTS**

8  **Ubiquiti's History and Business**

9       18.    Founded in June 2005, Ubiquiti is a next-generation communications technology

10  company that designs and develops proprietary technologies.  Ubiquiti's products and solutions

11  have bridged the digital divide between emerging and developed markets by fundamentally

12  changing the economics of deploying high performance networking solutions in underserved and

13  underpenetrated markets globally.  Ubiquiti's technology platforms AirMax, UniFi, AirView and

14  AirFiber, focus on delivering industry-leading performance, compelling price-performing

15  characteristics and an unparalleled user experience.  Ubiquiti has reduced high product and

16  network deployment costs and other business model inefficiencies to enable rapid market

17  adoption of its products and solutions in emerging markets.

18       19.    Ubiquiti's extensive product line includes the Nanostation, NanoStation M,

19  NanoStation Loco M (collectively, "NanoStations"), the AirRouter, the PicoStation, the

20  PowerStation, the AirGrid M series, the AirView series, the Rocket M series, the UniFi series,

21  and the Bullet.  The NanoStations are wireless "customer premises equipment" that permit

22  outdoor throughput.  The AirGrid M is a broadband wireless device that combines antenna and

23  radio using Ubiquiti's proprietary Innerfeed technology.  The Rocket M and Bullet are radio

24  devices with enhanced receivers.

25       20.    All Ubiquiti products run on Ubiquiti's proprietary airOS® operating system and

26  under Ubiquiti's proprietary AirMAX® protocol.  The AirMAX® logo is present on the

27  packaging of all Ubiquiti products.  The airOS® logo appears onscreen when the user logs in on

28

1  the web interface using the Ubiquiti username and password, which also appear on the product
2  packaging.

3      21.      All Ubiquiti product packaging is labeled with Ubiquiti's name and corporate
4  address, Ubiquiti's domain name (www.ubnt.com), the Ubiquiti logo, and the AIRMAX®
5  trademark.  They are also marked with a unique identifying code called a Media Access Control
6  ID ("MAC ID").  The product packaging and the product labels also contain a unique Federal
7  Communications Commissions ("FCC") IDentification number assigned by the FCC, SWX-M2,
8  which can be used to find information about the manufacturer and the product, including
9  approved frequency ranges, via the FCC website.  The packaging and the labels also have the
10  European Union "CE" mark, certifying compliance with European Union safety, health and
11  environmental protection requirements.  Finally, Ubiquiti has recently started to include a "Quick
12  Start Guide" bearing the Ubiquiti Networks trademark and the Ubiquiti logo with each of its
13  products.  The guide has instructions on how to enter a username and password on the Ubiquiti
14  website, which is a preliminary step required to access the embedded airOS® operating system in
15  each device.

16      22.      Most Ubiquiti products, including NanoStations, come with a Power Over
17  Ethernet ("POE") cord and adaptor, which also bear the Ubiquiti Networks name and the Ubiquiti
18  logo.  All Ubiquiti POE cords and adaptors are inspected by the Underwriters Laboratories
19  ("UL") for quality and safety and are given a UL certificate as a condition of final sale.  This UL
20  certificate is affixed directly to the POE adaptor and is generally accepted within the industry as
21  conveying to competitors and consumers that the product has met certain usage, performance, and
22  safety requirements.  The POE adaptor also bears the European Union "CE" mark.

23      23.      In general, Ubiquiti designs and develops each of its products in-house, and uses
24  contract manufacturers based in China and Taiwan to manufacture the products according to
25  Ubiquiti's proprietary designs.  Ubiquiti has stringent standards that contract manufacturers are
26  required to meet, and closely monitors the quality of products that they produce to assure that
27  they meet Ubiquiti's high quality standards.

28

1     24.    Ubiquiti uses a worldwide network of distributors to market and distribute its

2 products. The products are currently offered in the United States and in over 65 other countries,

3 with a particular focus on emerging economies in South America, such as Argentina, Brazil, and

4 Paraguay. In most instances, the distributors acquire the products directly from Ubiquiti's

5 contract manufacturers located in China or Taiwan and ship them directly to the local market

6 where they are active.

7 **Ubiquiti's Intellectual Property and Goodwill**

8     25.    Ubiquiti has taken systematic steps to protect its corporate name and product

9 names.

10     26.    On April 30, 2009, Ubiquiti filed a trademark application in the United States

11 Patent and Trademark Office ("USPTO") for the mark AIROS® (stylized) for computer software

12 in International Class 9, claiming a first use date of at least as early as January 29, 2008. This

13 trademark was registered on February 9, 2010 under Registration No. 3,746,223.

14     27.    On December 23, 2009, Ubiquiti filed a trademark application in the USPTO for

15 the mark AIRMAX® for telecommunications and data networking hardware, also in International

16 Class 9, claiming a first use date of at least as early as July 1, 2009. This trademark was

17 registered on August 24, 2010 under Registration No. 3,837,240.

18     28.    On January 7, 2010, Ubiquiti filed a trademark application in the USPTO for the

19 mark UBNT® for telecommunications and data networking hardware, also in International Class

20 9, claiming a first use date of at least as early as December 31, 2006. This trademark was

21 registered on October 5, 2010 under Registration No. 3,856,016.

22     29.    On March 16, 2010, Ubiquiti filed a trademark application in the USPTO for the

23 mark AIRGRID® for antennas, also in International Class 9, claiming a first use date of at least

24 as early as December 1, 2009. This trademark was registered on December 7, 2010 under

25 Registration No. 3,888,037.

26     30.    On September 8, 2009, Ubiquiti filed a trademark application in the USPTO for

27 the mark AIRCONTROL® for computer software, also in International Class 9, claiming a first

28

1 | use date of at least as early as October 8, 2009. This trademark was registered on August 3, 2010

2 | under Registration No. 3,829,292.

3 | 31. On April 30, 2009, Ubiquiti filed a trademark application in the USPTO for the

4 | mark AIRVIEW® for wave generators, analyzers and sensors, also in International Class 9,

5 | claiming a first use date of at least as early as March 18, 2009. This trademark was registered on

6 | November 24, 2009 under Registration No. 3,715,098.

7 | 32. On August 4, 2010, Ubiquiti filed a trademark application in the USPTO for the

8 | mark UNIFI® (stylized) for transmitters and receivers, also in International Class 9, claiming a

9 | first use date of at least as early as January 15, 2011. This trademark was registered on

10 | December 6, 2011 under Registration No. 4,068,223.

11 | 33. Ubiquiti also has pending applications for the following marks in the United

12 | States:

| | |
|---|---|
| **AIRBLAST** | Computer software |
| **AIRCAM** | Cameras; camera system; surveillance system; computer hardware for IP video surveillance |
| **AIRFIBER** | Broadband radios |
| **AIRMAXSYNC** | Computer hardware and software for setting up and configuring wide area networks |
| **AIRSELECT** | Computer software |
| **AIRVISION** | Computer software and hardware for use in network management |
| **BULLET 2 UBIQUITI NETWORKS & Logo** | Outdoor radio devices |
| **Ubiquiti Logo** | Broadband wireless equipment; computer software; wireless access point (WAP) devices; devices for wireless radio transmission; telecommunications and data networking hardware, antennae |
| **EDGEMAX** | Routers |
| **INNERSTATION** | Radio devices |
| **MFI** | Display monitors, auto compasses, and software to manage traffic |
| **NANOBRIDGE** | Telecommunications and data networking hardware, |
| **NANOSTATION** | Telecommunications and data networking hardware |
| **PICOSTATION** | Telecommunications and data networking hardware |
| **POWERBRIDGE** | Telecommunications and data networking hardware |
| **ROCKET** | Radio devices |
| **UBIQUITI** | Broadband wireless equipment; computer software; wireless access point (WAP) devices; devices for wireless radio transmission; telecommunications and data networking hardware, antennae |
| **UBIQUITI NETWORKS** | Broadband wireless equipment; computer software; wireless access point (WAP) devices; devices for wireless radio transmission; telecommunications and data networking hardware, antennae |
| **UBIQUITI NETWORKS** | Broadband wireless equipment; computer software; wireless access point |

| & Logo | (WAP) devices; devices for wireless radio transmission; telecommunications and data networking hardware, antennae |
|--------|------------------------------------------------------------------------------------------------------------------|
| UNITEL | Computer software |

34.     Internationally, Ubiquiti holds registrations or has pending applications for all of the above marks in Argentina, Brazil, Chile, Colombia, Ecuador, Hong Kong, Paraguay, Peru, Taiwan, Uruguay, and Venezuela. In addition, Ubiquiti has applied to register and has registered several of its brand names and products names in China, and holds a European Union registration for UBIQUITI NETWORKS and Design.

35.     In addition to its trademarks, Ubiquiti owns two copyright registration for its airOS® operating system:

(a)     Ubiquiti owns U.S. Copyright No. TXu001795146 for airOS version 5.2.1.

(b)     Ubiquiti owns U.S. Copyright No. TXu001795147 for airOS version 5.3.

36.     In addition to its substantial intellectual property investments, Ubiquiti has expended considerable time and resources to advertise and promote its products and brand throughout the world. In additional to traditional advertising, Ubiquiti hosts a Ubiquiti Networks Community Forum for users of Ubiquiti products who spread information about the products by word of mouth, offers certification and training courses through the Ubiquiti Academy to those interested in installing or using Ubiquiti products, and holds a "World Conference" each year where it unveils and demonstrates its latest products. The 2012 Ubiquiti World Conference was held in March in Chicago, Illinois.

37.     In addition, Ubiquiti has received substantial unsolicited accolades and press. Ubiquiti received significant attention in August 2007 when a group of Italian amateur radio operators set a distance world record for point-to-point links in the 5.8 GHz spectrum using Ubiquiti cards and antennas. Ubiquiti also received the Wireless Internet Service Providers Association ("WISPA") Manufacturer of the Year award in both 2010 and 2011. Ubiquiti has also been nominated for awards by fellow wireless companies at WISPAPALOOZA 2010, and has won awards for best manufacturer as well as product of the year.

1    38.    As a result, Ubiquiti and its associated products are well known in the wireless

2    communications space in the United States and worldwide. Consumers and competitors alike

3    throughout the world have come to recognize Ubiquiti marks, including UBIQUITI™,

4    UBIQUITI NETWORKS™, AIRMAX®, AIROS®, NANOSTATION™, and AIRGRID®, as

5    symbols of Ubiquiti's excellence in wireless communications products.

**Defendant Kozumi's Business**

7    39.    Kozumi is a former distributor of Ubiquiti wireless products. It was incorporated

8    in the state of Florida on September 7, 2006 by Defendant Hsu, who is listed as the sole officer

9    and director of Kozumi, as well as Kozumi's registered agent, in Florida corporate filings. On

10   information and belief, Hsu manages all of Kozumi's distribution and manufacturing activities

11   out of his home and/or offices in southern Florida.

12   40.    According to its public website (http://www.kozumi-usa.com/new/about-us.html)

13   Kozumi is "a global supplier to business partners all over the world." Kozumi's product line

14   includes Wireless LAN, WISP solutions, Networking, High gain antennas, UPS and Mobile

15   connectivity accessories.

16   41.    On information and belief, Kozumi's original business was distributing third-party

17   networking and wireless communications products. As a distributor, Kozumi would purchase

18   products from original equipment or contract manufacturers at wholesale prices, and coordinate

19   the shipment and delivery of those products to various destinations throughout the world. The

20   products were then sold to end users and other retailers at higher unit prices. From 2008 until

21   September 2009, Kozumi provided such distribution services for Ubiquiti products to locations in

22   South America.

23   42.    On information and belief, Kozumi's biggest market is South America,

24   particularly Argentina, but the final destinations include at least Paraguay, Peru, Europe, Taiwan,

25   Brazil, and Columbia. On information and belief, some products distributed or sold by Kozumi

26   pass through the United States before being shipped to their final destinations.

27

28

1

### Ubiquiti's Relationship with Kozumi and Hsu

2   43.   In spring 2008, Hsu sought out Ubiquiti to become a distributor for Ubiquiti

3   products in Latin America. On or around May 14, 2008, Ubiquiti and Kozumi entered into an

4   Authorized Distribution Agreement ("ADA"). Ben Moore, Vice President of Business

5   Development at Ubiquiti, signed the ADA on behalf of Ubiquiti and Defendant Hsu signed on

6   behalf of Kozumi.

7   44.   Under the ADA, Ubiquiti appointed Kozumi to be a nonexclusive distributor of

8   Ubiquiti products in Latin America.

9   45.   Ubiquiti's obligations under the contract were to provide product, sales, and

10   technical training to Kozumi's sales team, to provide the agreed-upon pricing schedule, and to use

11   reasonable efforts to deliver products in a timely fashion.

12   46.   Kozumi's obligations as a distributor were to use its best efforts to locally promote

13   and market Ubiquiti products in Latin America, and to use reasonable efforts to meet specified

14   quarterly purchases. Kozumi also agreed not to disclose or release any Ubiquiti confidential

15   information to any third party without Ubiquiti's express approval.

16   47.   The ADA licensed Kozumi to use the Ubiquiti Networks trademark in connection

17   with its sales and marketing efforts under the ADA, but that the Ubiquiti Networks name and

18   trademark was owned by Ubiquiti Networks. Section 3(b) of the ADA provided as follows:

19
> Distributor is authorized to use Ubiquiti Networks name and
> trademark through its sales and marketing initiative – **The**

20
> **ownership of such mentioned name and trademark will remain**
> **Ubiquiti Networks property**.

21

22   (Emphasis added.) Except for Section 3(b) of the ADA, Ubiquiti never granted Kozumi or either

23   of the Individual Defendants any right to use any Ubiquiti trademark. Ubiquiti never authorized

24   any Defendant to seek registrations for any Ubiquiti trademark.

25   48.   Pursuant to the ADA, Kozumi began purchasing Ubiquiti-branded products from

26   Ubiquiti at wholesale prices and promoting and selling those products in Kozumi's Latin

27   American distribution channels, specifically Argentina, Paraguay, and Brazil.

28

49.     Kozumi initially identified the following two companies as its Latin American consignees: Syntronic S.A. in Argentina and Redemax S.A. in Paraguay.  Syntronic S.A.'s corporate records indicate that Defendant Hsu is President of Syntronic S.A and that Defendant Kung is "Director alternative" of Syntronic S.A.  Defendant Hsu's Facebook page also indentifies him as "owner" of Redemax S.A.

50.     On June 7, 2009, Hsu notified Ubiquiti that Kozumi wanted all future product shipments to be sent to Kozumi's corporate address in Miami, Florida.

51.     On information and belief, Defendants reaped considerable profits from their Ubiquiti product sales, and, in fact, became Kozumi's biggest revenue source.  This success was due in large part to Ubiquiti's established goodwill and relatively low pricing structure:  Kozumi could sell Ubiquiti products at a high markup and with little need for promotional spending.  Over the course of the parties' distribution relationship, Kozumi and its affiliates purchased nearly $2 million worth of Ubiquiti products.

52.     Kozumi's sales of Ubiquiti products were so profitable to Kozumi's business that, in or around June 2009, Hsu proposed to Ubiquiti's sales manager that the companies enter into a joint partnership, making Kozumi's Syntronic and Redemax affiliates "master distributors" of Ubiquiti products in South America.

53.     In or around September 2009, Ubiquiti learned that Kozumi was offering copycat products under the Kozumi brand, and using graphics on its website similar to those used by Ubiquiti.  Ubiquiti was concerned that Kozumi was leveraging Ubiquiti's trademarks and goodwill to obtain a customer base for its own copycat Kozumi-branded products.  Accordingly, Ubiquiti terminated the ADA with Kozumi and stopped filling orders received from Kozumi.

**Defendants' Scheme to Manufacture and Sell Counterfeit Ubiquiti Products**

54.     On information and belief, the loss of Ubiquiti as a revenue source was devastating to Kozumi's previously profitable business ventures in Latin America.  On information and belief, Defendants devised a worldwide scheme to sell counterfeit Ubiquiti to make up for Kozumi's loss.  The scheme involved: (1) stealing Ubiquiti's proprietary product designs;

1  (2) manufacturing and selling counterfeit Ubiquiti products, and (3) fraudulently obtaining the
2  trademark rights to the Ubiquiti brand in South America and the United States.

3        55.    On information and belief, Hsu initiated the counterfeiting scheme by working
4  with Kenny Deng, owner of a Hong Kong-based manufacturing facility called Hoky Technology
5  ("Hoky"), to arrange for the theft of Ubiquiti's proprietary product designs from one of Ubiquiti's
6  approved contract manufacturers. On information and belief, Defendants used the stolen designs
7  at the Hoky manufacturing facility to begin making counterfeit Ubiquiti products, including, but
8  not limited to, NanoStation, AirGrid, Rocket, and Bullet products and began offering these
9  products for sale in South America using Defendant Kozumi's network of distributors and
10  Defendant Hsu's related entities.

11        56.    The counterfeit Ubiquiti products obtained from the Hoky factory in China appear
12  identical to the genuine products. The counterfeit product packaging is labeled with Ubiquiti's
13  name and corporate address, Ubiquiti's domain name (www.ubnt.com), the Ubiquiti logo, and the
14  AIRMAX® trademark. It is also marked with the unique MAC ID identifying code, and the
15  Ubiquiti NanoStation IP address username, and password used to register the airOS® operating
16  system. The product packaging and labels go so far as to copy the FCC IDentification number
17  that was assigned by the FCC uniquely to Ubiquiti. When this number is entered into the FCC
18  website, it indicates that the manufacturer is Ubiquiti and provides information on frequencies for
19  the genuine Ubiquiti products, which may differ from the counterfeit products. The counterfeit
20  packaging and the labels also have the European Union "CE" mark. In addition, the counterfeit
21  products have POE cords and adaptors, which also bear the Ubiquiti Networks name, the Ubiquiti
22  logo, the UL certificate, and the European Union "CE" mark. On information and belief, the
23  counterfeit products have not been inspected by the Underwriters Laboratories for quality and
24  safety.

25        57.    As shown below, the products are virtually indistinguishable from actual Ubiquiti
26  products.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

 

**Ubiquiti Product**          **Kozumi counterfeit product**

14    58.    The contents of the counterfeit NanoStation box are: (i) a NanoStation Device; (ii)

15    one plastic strap held together with a sticker printed with "Ubiquiti Networks"; (iii) a Power Over

16    Ethernet ("POE") adaptor; and (iv) a power cord. The contents of the counterfeit NanoStation

17    box are identical to the contents of the actual Ubiquiti NanoStation boxes being sold around

18    August 2011.

19    59.    On information and belief, the MAC IDs provided with the counterfeit products

20    are derivative of the actual MAC IDs used by Ubiquiti with the authentic products. Once a user

21    of the counterfeit product activates the MAC ID provided with that product, the counterfeit

22    product runs Ubiquiti's copyrighted airOS® operating system.

23    60.    On information and belief, in at least some instances, Kozumi arranges to have the

24    counterfeit goods transshipped through Florida before reaching their final destination in Latin

25    America.

26    61.    The Latin American distributors currently associated with Defendants include:

27

28

1                 a.      Redemax S.A., Rubio Nu c/ Ad. Jara , Ed. Continental piso 9 of 904,

2                      Ciudad del Este – Paraguay (www.redemax.com.py).  Defendant Hsu

3                      identifies himself as the "owner" of Redemax on his Facebook page.

4                 b.      Syntronic S.A., California 2082 1° Piso Of. D-104, Capital Federal, Buenos

5                      Aires, Argentina (www.syntronic.com.ar).  Defendant Hsu is President and

6                      Defendant Kung is "Director alternative" according to Syntronic's

7                      corporate records.

8                 c.      Tech Depot S.A., d/b/a/ Connectis, California 2082 ° Piso Of. D-104,

9                      Capital Federal, Buenos Aires, Argentina (www.connectis.com.ar).

10               d.      Netcom.  (www.netcom-wisp.com).  Defendant Kung is listed as a

11                      shareholder of Netcom according to Netcom's corporate records.

12               e.      Omega, Av. Motes de Oca 2185, Barracas, Capital Federal 1270, Argentina

13                      (www.omegatech.com.ar).

14      62.      On information and belief, Redemax, Syntronic, Tech Depot d/b/a Connectis,

15 Netcom and Omega are owned, managed, and/or operated by or through the Individual

16 Defendants or individuals working with them.  For example, the Argentinean address listed on

17 Defendant Kozumi's website is the same address listed on Argentinean corporate records for

18 Syntronic and Tech Depot/Connectis.

19      63.      None of these entities is an authorized distributor or reseller of Ubiquiti products,

20 yet Ubiquiti recently learned that Redemax, Netcom, and Tech Depot/Connectis misleadingly

21 identify Ubiquiti as a "partner" on their websites.  *See* http://www.redemax.com.py/empresa.html;

22 http://www.netcom-wisp.com/; http://www.connectis.com.ar/.  Furthermore, Redemax and

23 Netcom advertise Ubiquiti products for sale including the NanoStation, NanoStation Loco, and

24 AirGrid.

25      64.      On information and belief, Defendants also own or are affiliated with Genal

26 Technology Ltd., Tzu-Chiang Rd., Wu-Chi District, Taichung AS 43546, Taiwan.

27      65.      Because Defendants have been able to build their business without any investment

28 in research and development, Defendants are able to offer the counterfeit products at much lower

1    price points than genuine Ubiquiti products. This has allowed Defendants to reap profits that they
2    are able to plow back into the counterfeiting operation so that it continues to grow. On
3    information and belief, Hoky recently posted job openings at its counterfeiting plant and has
4    expanded its counterfeit product line to include additional Ubiquiti products.

5        66.      Each counterfeit product sold by Defendants represents not only a lost sale of a
6    genuine Ubiquiti product, but also direct harm to Ubiquiti's goodwill. On information and belief,
7    the counterfeit products do not undergo testing and are made from low quality materials that are
8    certain to cause more product malfunctions than genuine Ubiquiti products. In fact, Ubiquiti
9    recently received a report of a failure rate of 12% on counterfeit products purchased by a
10   longstanding Ubiquiti customer. Because Ubiquiti is dependent on word of mouth promotion for
11   many of its sales, increases in product complaints from customers who believe they are
12   purchasing genuine Ubiquiti products could easily escalate and destroy Ubiquiti's reputation.
13   Furthermore, these counterfeit products can be sent back to Ubiquiti for warranty returns because
14   the customers believe that they are genuine products. To protect its goodwill, Ubiquiti processes
15   all warranty returns in the same fashion—regardless of whether the products are genuine Ubiquiti
16   products or Defendants' counterfeit products. Each "return" of a counterfeit product thus results
17   in an additional out-of-pocket cost to Ubiquiti.

18                      **Ubiquiti's Efforts to Stop the Counterfeiting**

19       67.      In March 2011, Ubiquiti was notified by a distributor in China that counterfeit
20   Ubiquiti products were being manufactured by Hoky in China. Over the course of several
21   months, Ubiquiti acquired and investigated the products, confirmed that they were counterfeit,
22   and used information found on the PCB boards in the counterfeit products sold in Argentina to
23   track them to Hoky's plant in Shenzhen, China.

24       68.      Ubiquiti also investigated the source of the designs, plans, and software that Hoky
25   is using to make the counterfeit products. Ubiquiti is informed and believes, and on that basis
26   alleges, that a product process engineer who was previously employed by two different Ubiquiti
27   contract manufacturers in China, Zhang Ping ("Zhang"), stole Ubiquiti's proprietary designs,
28   plans, and software and provided them to Hoky. Zhang subsequently offered to tell another

1  Ubiquiti vendor what was going on at Hoky in return for a significant payment. When the
2  payment was not made, Zhang stopped contact with the vendor.

3      69.    Thereafter, Ubiquiti monitored Hoky's activities and determined that in October
4  2011 alone, the Hoky factory shipped 31,000 products with a value of about $1 million. Between
5  November 1, 2011 and November 16, 2011, Hoky shipped over 8,000 counterfeit products with a
6  value of over $350,000.

7      70.    At the same time, Ubiquiti hired Chinese counsel to prepare a criminal complaint
8  to be filed with the Shenzhen Public Security Bureau.

9      71.    On November 17, 2011, the Shenzhen Public Security Bureau raided the Hoky
10  factory, seized evidence of the counterfeit operation, including over 1,200 counterfeit Ubiquiti
11  products, plastic molds, and equipment used to produce such counterfeit products, shipping logs
12  and sales invoices, and shut down the factory. The Shenzhen Public Security Bureau also
13  detained Kenny Deng, the operator of the Hoky plant.

14      72.    During the raid, the Shenzhen Public Security Bureau provided an employee of
15  Ubiquiti (who had accompanied officers from the Shenzhen Public Security Bureau on the raid)
16  with copies of shipping logs and invoices showing that Hoky had just sent over 6,000 "Ubiquiti"
17  products to Defendant Kozumi for delivery in Paraguay and a transcript of Skype conversations
18  between the Hoky Sales Manager and Daniel Hsu (the brother of Defendant Hsu and an employee
19  in Defendant Kozumi's Taiwan office) in which Daniel Hsu requests photographs to confirm the
20  accuracy of the counterfeit products. The employee also took a video tape of the interior of the
21  factory, showing boxes with over 1,200 counterfeit Ubiquiti products.

22      73.    During the raid, Hoky's Sales Manager confirmed that Zhang (Ubiquiti's contract
23  manufacturers' former product process engineer) was employed as Hoky's product engineer.
24  Zhang was not at the factory when it was raided, but telephoned Hoky's Sales Manager during the
25  raid. The Sales Manager spoke to him on the phone and told him to return to work because the
26  police were at the factory and wanted to speak to him. He did not comply.

27      74.    On or about December 28, 2011, Deng was released by Chinese authorities
28  because he pointed to a fraudulently obtained Argentinean trademark registration for UBIQUITY

1  NETWORKS owned by Defendant Hsu and claimed that he sold his Ubiquity-labeled counterfeit

2  products only to Defendant Hsu. On information and belief, Hsu remains under investigation by

3  the Shenzhen Public Security Bureau.

4       75.    On information and belief, the Hoky factory resumed operations in early February

5  after Deng was released from prison, and, since Deng's release, has grown in size. Now the Hoky

6  facility is making larger quantities and a wider variety of Ubiquiti products, including Ubiquiti's

7  more expensive products such the AIRGRID® and the NANOBRIDGE.

8       76.    Defendants continue to manufacture and sell counterfeit Ubiquiti products.

9  Although Kozumi is no longer a distributor of genuine Ubiquiti products, Ubiquiti just discovered

10 that at least 5,900 "Ubiquiti" products recently passed through Argentina Customs in shipments

11 from Defendant Kozumi to Tech Depot S.A., d/b/a/ Connectis, one of the Latin American

12 distributors operated by Hsu. According to Argentine Customs records, at least 1,300 of these

13 "Ubiquiti" products were routed through Port Everglades in the United States, and all of these

14 "Ubiquiti" products originated in China. On information and belief, these are counterfeit

15 products manufactured at the recently reopened Hoky plant in China.

16 **Defendants' Bad-Faith Efforts to Secure Argentinean Trademark Rights to Ubiquiti Name**

17      77.    On information and belief, Hsu's scheme to capitalize on Ubiquiti's name and

18 goodwill also involved fraudulently obtaining and attempting to obtain foreign and domestic

19 trademark rights to the UBIQUITI brand and logo, with the goal of stealing Ubiquiti's identity

20 and eventually displacing Ubiquiti as the ostensible owner of the brand.

21      78.    On information and belief, on May 2, 2008, Daniel Alejandro Pons and Guillermo

22 Cristiani filed a trademark application in Argentina for the mark UBIQUITI NETWORKS &

23 Design. The mark was eventually registered. Daniel Alejandro Pons and Guillermo Cristiani

24 were the sole shareholders of Ditelco Informatica S.R.L., and, at the time the trademark

25 application was filed, Ditelco was a reseller of Ubiquiti products in Argentina. Pons and

26 Cristiani—were well aware that the UBIQUITI trademark belonged to and was associated with

27 Ubiquiti when they filed the application to register the mark in Argentina.

28

1    79.    On information and belief, after Ubiquiti stopped shipping Ubiquiti products to

2    Kozumi in late 2009, Hsu acquired the Argentinean registration for UBIQUITI NETWORKS &

3    Design from Pons and Cristiani with the intent to sell his counterfeit products under that mark in

4    Argentina. According to papers filed with the trademark office in Argentina, Hsu acquired the

5    UBIQUITI NETWORKS & Design mark on October 20, 2010 for Argentinean pesos 200

6    (approximately $50 USD). In November 2010, Hsu filed documents with the Argentinean

7    Trademark Office to record the assignment of the UBIQUITI NETWORKS & Design trademark.

8    Being a former distributor of Ubiquiti products in Latin America, and having personally signed

9    the ADA which made clear Ubiquiti's ownership of the Ubiquiti Networks name and trademark,

10   there is no question that Hsu was well aware of Ubiquiti's interest in the UBIQUITI

11   NETWORKS & Design trademark when he acquired the Argentinean trademark registration. On

12   information and belief, Hsu acquired the Argentinean trademark registration with the intent to sell

13   his counterfeit products under that mark in Argentina. On information and belief, Tech Depot

14   S.A., d/b/a/ Connectis, one of Defendants' related entities, hired Guillermo Cristiani at about the

15   time that Hsu acquired the Argentinean trademark registration. Current credit reports show that

16   Cristiani remains an employee of Tech Depot S.A.

17   80.    Defendant Hsu and his affiliates filed additional trademark applications in

18   Argentina, presumably to assure a continued defense to further criminal counterfeiting activity in

19   China. Specifically, on August 20, 2010, Mr. Jung Hsin Peng, a shareholder of Defendant's

20   affiliated entity Tech Depot and a former Syntronic employee, filed three trademark applications

21   in Argentina for the marks NANOSTATION, NANOBRIDGE, and AIRGRID. The AIRGRID

22   registration has been granted and the others are still pending decision. As noted above,

23   NANOSTATION, NANOBRIDGE and AIRGRID are all brand names of some of Ubiquiti's top-

24   selling products and, on information and belief, NanoStation and AirGrid are among the products

25   that Defendants have been counterfeiting.

26   81.    On July 4, 2011, Defendant Hsu filed a trademark application in Argentina (Serial

27   No. 3,100,566) for UBNT in International Class 9.

28

COMPLAINT ISO PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER          18

**Ubiquiti's Discovery of Defendants' Argentinean Trademark Filings**

82.    Ubiquiti first learned of Hsu's ownership of an Argentinean registration for UBIQUITI NETWORKS & Design sometime after December 28, 2011, when Deng was released from prison in China. At the time, Ubiquiti was informed by the Chinese prosecutor that Deng had presented evidence that Hoky has a customer in Argentina who was authorized to use the UBIQUITI NETWORKS & Design trademark in Argentina. Ubiquiti investigated further and found that Defendant Hsu owned an Argentinean registration for the mark. On information and belief, Hoky's "customer" is none other than Defendant Hsu—the mastermind behind the counterfeiting scheme.

83.    Further investigation revealed that Hsu's related companies in Argentina, including, Redemax, Netcom, and Tech Depot, purport to offer "Ubiquiti" products. Ubiquiti acquired certain of those "Ubiquiti" products from Tech Depot.

84.    As with the products obtained from the Hoky factory in China, the counterfeit Ubiquiti products obtained from Tech Depot appear identical to the genuine products, to the extent that anyone seeing them would believe that they come from Ubiquiti. Not being content to steal Ubiquiti's trademarks, the products and packaging steal Ubiquiti's identity. The product packaging is labeled with *Ubiquiti's name and corporate address and Ubiquiti's domain name (www.ubnt.com)*, as well as the Ubiquiti logo and the AIRMAX® trademark. It is also marked with the unique MAC ID identifying code and the Ubiquiti username and password used to register the airOS® operating system. *The product packaging and labels include the FCC IDentification number that was assigned by the FCC uniquely to Ubiquiti*. The counterfeit packaging and the labels also have the European Union "CE" mark, and the counterfeit products have POE cords and adaptors that also bear the Ubiquiti Networks name, the Ubiquiti logo, the UL certificate, and the European Union "CE" mark.

85.    Upon this discovery, Ubiquiti immediately contacted Hsu to demand that he cease selling the counterfeit products, but Hsu refused to comply. Instead, Defendant Hsu has demanded large sums of money from Ubiquiti for the "return" of the fraudulently obtained UBIQUITI NETWORKS & Design registration in Argentina. On April 1, 2012, to justify his

1  demand for over $2.5 million for the return of the Ubiquiti trademark, Defendant Hsu explained

2  that the amount included a "large volume of components, housings, materials and PCBA boards

3  confiscated" in China, and "a very substantial amount on legal fees" incurred in defending the

4  Hoky factory in China.  Hsu has also made thinly veiled threats against Ubiquiti and has

5  increased the amounts demanded from Ubiquiti in return for Hsu's commitment not to follow

6  through on his threats.

7      86.    In furtherance of his scheme to take over the Argentinean market with counterfeit

8  goods, on January 30, 2012, Defendant Hsu filed oppositions against Ubiquiti's pending

9  Argentinean trademark applications filed for its own marks, including UBNT (Ser. No.

10  3,117,975), UBIQUITI NETWORKS & Logo (Ser. No. 3,117,974), and the Ubiquiti Logo (Ser.

11  No. 3,117,973).

12     87.    Ubiquiti has since learned that on June 20, 2011, Defendant Kung, Defendant

13  Hsu's wife, filed an application in the United States (Serial No. 85/350,180) for the mark

14  UBIQUITI.  The email address associated with the filing is Defendant Hsu's e-mail address

15  (williamhsu@hotmail.com), and the physical address is 6960 NW 50th Street, Miami, Florida

16  33166, which is Defendant Kozumi's headquarters.

17     88.    On information and belief, Defendants knowingly, willfully, intentionally and

18  maliciously engaged in the above scheme to counterfeit Ubiquiti's products, to deceive the

19  consuming public, and to unfairly drive Ubiquiti out of the market using its own reputation and

20  goodwill.

21              **Defendants' False Statements About Ubiquiti**

22     89.    On information and belief, on April 26, 2012, Hsu posted a message to the

23  Ubiquiti Networks forum titled "Public listed Ubiquiti Networks CEO Robert Pera under

24  investigation by China authorities for using mafia ties to stop its competitors in China?" The same

25  post was also emailed to some or all of Ubiquiti's resellers and distributors from an anonymous

26  Gmail address and posted on http://k.iFeng.com on or around April 14, 2012. The posts and email

27  contain a number of false statements about Ubiquiti and Robert Pera including the following:

28

- "There has been rumors from Shenzhen local authorities that some factories in China producing products that are competition for Ubiquiti Networks filed a claim with the local police in Shenzhen against Ubiquiti's claiming that its CEO Robert Pera sent Chinese mafia to their factories to intimidate, harass and threatening them to stop trying to produce technology that are competition to them."

- "The company has faced legal trademark problems in many countries, as they did not register their trademark in most of the countries worldwide."

- "Ubiquiti has sold the idea that their technology is unique. As we have interviewed some of the industry insiders we found out that their 'unique technology' is a software protocol that they built inside their software and it seems that their competition in Asia already are providing products that are similar or even superior at much lower cost."

90.     April 30, 2012, a similar story was posted on Tianya.cn (http://bbs.city.tianya.cn/tianyacity/content/338/1/24857.shtml), one of the top forums in China. The Tianya.cn story got picked up in the U.S. by Yahoo! Finance and reported on or around 5:00am Eastern Standard Time on May 2, 2012.

91.     When the stock market opened on May 2, 2012, Ubiquiti Network's stock (UBNT) had dropped 7.9%. It continued to drop throughout the day and the false rumors about Ubiquiti got picked up by more and more finance blogs. When the market closed on May 2, 2012, UBNT had dropped a total of 17.9% on May 2, 2012.

92.     Over the next few days, Ubiquiti's stock continued to drop, and over the course of three days, Ubiquiti lost approximately $800 million in market capitalization. This extreme harm to the company and to its shareholders is a direct result of Defendants' counterfeiting activities and defamatory statements.

### Ubiquiti's Efforts to Defend Its Trademark Rights and Goodwill

93.     After initiating criminal actions in China in November 2011 to close the Hoky counterfeiting plant and to seek damages, Ubiquiti has taken additional steps to stop Hsu's continuing sale of counterfeit goods in Argentina.

1  94. On or about April 2, 2012, Ubiquiti began a trademark nullification process in

2 Argentina against Hsu to cancel his registration for the mark UBIQUITI NETWORKS & Design

3 and to dismiss his oppositions to Ubiquiti's pending trademark applications. The parties met for a

4 required initial mediation on April 17, 2012, where Hsu refused to give back the Argentinean

5 registration or to withdraw his oppositions to Ubiquiti's trademark filings. On May 8, 2012,

6 Ubiquiti filed a lawsuit seeking nullification of Defendant Hsu's Argentinean trademark

7 registration on the basis that it was obtained in bad faith, dismissal of Defendant Hsu's unfounded

8 oppositions to Ubiquiti's trademark application, granting of Ubiquiti's oppositions to Defendant

9 Hsu's recently filed fraudulent Argentinean trademark applications, an injunction preventing

10 further use of any Ubiquiti trademarks, and damages.

11  95. On April 26, 2012, Ubiquiti also began a trademark nullification process in

12 Argentina against Peng to nullify Peng's registration for the mark AIRGRID.

13       **Continuing Harm to Ubiquiti's Goodwill**

14  96. Defendants' sale of counterfeit Ubiquiti products deceives the public into

15 believing that Defendants are selling genuine Ubiquiti products. Potential purchasers and

16 consumers, upon encountering Defendants' products or advertisements bearing the Ubiquiti

17 marks, will mistakenly believe that Defendants' goods originate with, or are licensed, approved,

18 or sponsored by, or otherwise affiliated with or related to, Ubiquiti or its products. Indeed,

19 Ubiquiti has already received inquiries from distributors asking whether the companies are the

20 same or otherwise affiliated. Ubiquiti suffers further competitive harm from Defendants'

21 activities to the extent that Defendants reap profits from their counterfeiting scheme that they are

22 then able to reinvest into their counterfeiting enterprise, allowing them to sell increased volumes

23 of counterfeit products to the detriment of Ubiquiti.

24  97. In addition, Ubiquiti and its goodwill are being harmed because consumers are

25 likely to associate the substandard counterfeit products offered by Defendants with Ubiquiti.

26 Defendants' conduct causes Ubiquiti irreparable harm because Ubiquiti has no control over the

27 quality of the counterfeit products and cannot confirm the quality of the counterfeit products that

28

1   bear the Ubiquiti trademarks, which Defendants represent to the public as being from Ubiquiti

2   Networks, Inc., at its address in San Jose, California.

3        98.    If Defendants continue their sale of the counterfeit products bearing the Ubiquiti

4   trademarks, the Ubiquiti corporate name and address, the Ubiquiti domain name, and the unique

5   Ubiquiti FCC IDentification number, Ubiquiti will be irreparably harmed through the significant

6   loss of goodwill and reputation.  Moreover, Ubiquiti will continue to suffer irreparable harm

7   unless Defendants are restrained from selling the counterfeit "Ubiquiti" goods.

8        99.    Ubiquiti has no adequate remedy at law.

9   **FIRST CAUSE OF ACTION**

10   **(Counterfeiting Under 15 U.S.C. § 1114)**

11        100.    Ubiquiti repeats and realleges each allegation set forth in paragraphs 1 through __

12   above as if fully set forth herein.

13        101.    As a direct and proximate result of Defendants' wrongful conduct, Ubiquiti has

14   been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts.

15        102.    The acts of Defendants described above constitute counterfeiting in violation of

16   Section 32 of the Lanham Act, 15 U.S.C. § 1114.

17        103.    Ubiquiti has valid and protectable registered rights in the AIROS® and

18   AIRMAX® trademarks since prior to Defendants' first use of them.

19        104.    Defendants had actual knowledge of Ubiquiti's ownership and use of the AIROS®

20   and AIRMAX® marks prior to their adoption and use of these marks on counterfeit Ubiquiti

21   products.  Indeed, Defendants began using the marks specifically because the marks had achieved

22   a measure of international recognition and goodwill from which Defendants intended to profit.

23        105.    Ubiquiti has not authorized Defendants to use the AIROS® and AIRMAX® marks

24   in connection with their counterfeit products.

25        106.    On information and belief, Defendants have and are making use of the AIROS and

26   AIRMAX marks in connection with goods which Defendants have imported into, processed,

27   financed, and/or shipped via Defendants' headquarters in the United States.  Defendants'

28   activities within the United States have been essential to their counterfeiting scheme.

107.   As described above, Defendants' unauthorized use of the AIROS and AIRMAX marks has caused confusion and is likely to cause further confusion, mistake, or deception on the part of distributors and consumers as to the source, nature, and quality of the products and services Defendants are promoting or selling, and constitutes counterfeiting in violation of 15 U.S.C. § 1114.

108.   On information and belief, as a result of Defendants' unauthorized use of the AIROS and AIRMAX marks, Defendants have received and will continue to receive substantial profits to which they are not entitled, and Ubiquiti has or will suffer actual monetary damages, including lost profits and impairment of the value of the AIROS® and AIRMAX® marks.

109.   As a direct and proximate result of Defendants' wrongful conduct, Ubiquiti has been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts, and unless enjoined by the Court, Ubiquiti will suffer further harm to its name, reputation and goodwill.  This harm constitutes an injury for which Ubiquiti has no adequate remedy at law.

110.   On information and belief, Defendants have acted maliciously and willfully to usurp Ubiquiti's rights, and Defendants should be held liable to Ubiquiti for treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117(b).

## SECOND CAUSE OF ACTION

### (Trademark Infringement Under 15 U.S.C. § 1114)

111.   Ubiquiti repeats and realleges each allegation set forth in paragraphs 1 through __ above as if fully set forth herein.

112.   The acts of Defendants described above constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

113.   As a direct and proximate result of Defendants' wrongful conduct, Ubiquiti has been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts.

114.   Ubiquiti has valid and protectable registered rights in the AIROS® and AIRMAX® trademarks since prior to Defendants' first use of them.

115.   Defendants had actual knowledge of Ubiquiti's ownership and use of the AIROS® and AIRMAX® marks prior to their adoption and use of these marks on counterfeit Ubiquiti

1      products. Indeed, Defendants began using the marks specifically because the marks had achieved

2      a measure of international recognition and goodwill from which Defendants intended to profit.

3      116.    Ubiquiti has not authorized Defendants to use the AIROS® and AIRMAX® marks

4      in connection with their counterfeit products.

5      117.    On information and belief, Defendants have and are making use of the AIROS and

6      AIRMAX marks in connection with goods which Defendants have imported into, processed,

7      financed, and/or shipped via Defendants' headquarters in the United States. Defendants'

8      activities within the United States have been essential to their counterfeiting scheme.

9      118.    As described above, Defendants' unauthorized use of the AIROS and AIRMAX

10     marks has caused confusion and is likely to cause further confusion, mistake, or deception on the

11     part of distributors and consumers as to the source, nature, and quality of the products and

12     services Defendants are promoting or selling, constituting trademark infringement in violation of

13     15 U.S.C. § 1114.

14     119.    On information and belief, as a result of Defendants' unauthorized use of the

15     AIROS and AIRMAX marks, Defendants have received and will continue to receive substantial

16     profits to which they are not entitled, and Ubiquiti has or will continue to suffer actual monetary

17     damages, including lost profits and impairment of the value of the AIROS® and AIRMAX®

18     marks.

19     120.    As a direct and proximate result of Defendants' wrongful conduct, Ubiquiti has

20     been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts,

21     and unless enjoined by the Court, Ubiquiti will suffer further harm to its name, reputation and

22     goodwill. This harm constitutes an injury for which Ubiquiti has no adequate remedy at law.

23     121.    On information and belief, Defendants have acted maliciously and willfully to

24     usurp Ubiquiti's rights, and Defendants should be held liable to Ubiquiti for treble damages and

25     attorneys' fees pursuant to 15 U.S.C. § 1117(a).

26

27

28

1

## THIRD CAUSE OF ACTION

2

### (False Designation of Origin Under 15 U.S.C. § 1125(a))

3      122.    Ubiquiti repeats and realleges each allegation set forth in paragraphs 1 through __

4    above as if fully set forth herein.

5      123.    The acts of Defendants described above constitute unfair competition and false

6    designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

7      124.    As a direct and proximate result of Defendants' wrongful conduct, Ubiquiti has

8    been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts.

9      125.    Ubiquiti has valid and protectable registered rights in the AIROS®, AIRMAX®,

10   UBIQUITI™, UBIQUITI NETWORKS™, and Ubiquiti Logo trademarks since prior to

11   Defendants' first use of them.

12     126.    Defendants had actual knowledge of Ubiquiti's ownership and use of the

13   AIROS®, AIRMAX®, UBIQUITI™, UBIQUITI NETWORKS™, and Ubiquiti Logo marks

14   prior to their adoption and use of these marks on counterfeit Ubiquiti products. Indeed,

15   Defendants began using the marks specifically because they had achieved a measure of

16   international recognition and goodwill from which Defendants intended to profit.

17     127.    Ubiquiti has not authorized Defendants to use the AIROS®, AIRMAX®,

18   UBIQUITI, UBIQUITI NETWORKS, or Ubiquiti Logo marks in connection with their

19   counterfeit products.

20     128.    Defendants unauthorized use of the AIROS, AIRMAX, UBIQUITI, UBIQUITI

21   NETWORKS, and Ubiquiti Logo marks, as well as the Ubiquiti Networks, Inc. corporate name

22   and address, is likely to deceive consumers as to the origin of Defendants' products and is likely

23   to cause consumers to believe that there is a relationship between Defendants and Ubiquiti and/or

24   that Defendants are selling Ubiquiti's genuine products constitutes false designation of origin, in

25   violation of 15 U.S.C. § 1125(a).

26     129.    Upon information and belief, as a result of Defendants' unauthorized use of the

27   AIROS, AIRMAX, UBIQUITI, UBIQUITI NETWORKS, and Ubiquiti Logo marks, as well as

28   the Ubiquiti Networks, Inc. corporate name and address, Defendants have received and will

1  continue to receive substantial profits to which they are not entitled, and Ubiquiti has or will

2  suffer actual monetary damages, including lost profits and impairment of the value of the

3  AIROS®, AIRMAX®, UBIQUITI™, UBIQUITI NETWORKS™, and Ubiquiti Logo marks, as

4  well as the Ubiquiti Networks, Inc. corporate name.

5      130.    As a direct and proximate result of Defendants' wrongful conduct, Ubiquiti has

6  been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts,

7  and unless enjoined by the Court, Ubiquiti will suffer further harm to its name, reputation and

8  goodwill.  This harm constitutes an injury for which Ubiquiti has no adequate remedy at law.

9      131.    On information and belief, Defendants have acted maliciously and willfully to

10 usurp Ubiquiti's rights, and Defendants should be held liable to Ubiquiti for treble damages and

11 attorneys' fees pursuant to 15 U.S.C. § 1117(a).

12                          **FOURTH CAUSE OF ACTION**

13                  **(Violation of Federal Computer Fraud and Abuse Act)**

14     132.    Ubiquiti repeats and realleges each allegation set forth in paragraphs 1 through __

15 above as if fully set forth herein.

16     133.    Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C.

17 § 1030(a)(6)(A), by knowingly and with intent to defraud trafficking in Ubiquiti's password(s) or

18 similar information through which a computer may be accessed without authorization, where such

19 trafficking affected interstate or foreign commerce.

20     134.    Ubiquiti has suffered damages and loss by reason of these violations, including,

21 without limitation, harm to Ubiquiti's data and/or computer(s) and other losses and damages in an

22 amount to be proven at trial, but in any event, in an amount over $5000 aggregated over a one

23 year period.

24                            **FIFTH CAUSE OF ACTION**

25      **(Violation of California's Comprehensive Computer Data Access and Fraud Act)**

26     135.    Ubiquiti repeats and realleges each allegation set forth in paragraphs 1 through __

27 above as if fully set forth herein.

28

1    136.   Defendants have violated, and continue to violate, the Comprehensive Computer

2   Data Access and Fraud Act, California Penal Code § 502(c) by knowingly and without

3   permission providing or assisting in providing a means of accessing a computer, computer

4   system, or computer network.

5    137.   Upon information and belief, each of the acts by Defendants complained of in this

6   claim for relief is willful, malicious, oppressive, fraudulent, and in conscious disregard of

7   Ubiquiti's rights, justifying the imposition of punitive and exemplary damages under California

8   Civil Code § 3294.

9    138.   Ubiquiti has suffered damages and loss by reason of these violations, including

10   without limitation harm to Ubiquiti's data and/or computer(s), loss of business, expenses

11   necessarily incurred in investigating the unauthorized access and abuse of Ubiquiti's computer

12   system, computer networks, computer programs and/or data and in preventing such access and

13   abuse from occurring, and other losses and damages in an amount to be proved at trial.

14                          **SIXTH CAUSE OF ACTION**

15                  **(Direct Copyright Infringement under 17 U.S.C § 101)**

16    139.   Ubiquiti repeats and realleges each allegation set forth in paragraphs 1 through __

17   above as if fully set forth herein. Ubiquiti owns all copyright rights to the proprietary portions of

18   its airOS® operating systems. Two versions of the airOS® operating system have been

19   registered with the U.S., Copyright Office, namely airOS v.5.2.1 and airOS v.5.3. Attached

20   hereto as Exhibits 1 and 2 are true and correct copies of these copyright registrations.

21    140.   On information and belief, Defendants have been reproducing the registered airOS

22   v.5.2.1 program in its products and distributing those products throughout the world.

23    141.   On information and belief, these products have been and are continuing to be

24   imported into the United States.

25    142.   Ubiquiti did not grant any permission or authorization to any Defendant for the

26   reproduction of its airOS v.5.2.1 operating system in their products, or for the distribution of

27   products containing the airOS v.5.2.1 operating system.

28

COMPLAINT ISO PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER          28

1      143.    On information and belief, Defendants, for personal advantage and private

2  financial gain, without Ubiquiti's permission, consent, knowledge, authority, or license, have

3  been reproducing, distributing, displaying, and otherwise exploiting the infringing material.

4      144.    On information and belief, each Defendant contributed to the copyright

5  infringement and authorized and/or ratified it and/or knowingly participated therein for financial

6  gain.

7      145.    Defendants' actions in reproducing, distributing and displaying the infringing

8  works, as well as in importing the counterfeit products in the United States, infringes Ubiquiti's

9  exclusive rights to its copyrights, and constitutes copyright infringement in violation of 17 U.S.C.

10  § 101, *et seq.*

11      146.    The foregoing acts of copyright infringement have been willful, intentional, and in

12  conscious disregard of the rights of Ubiquiti.

13      147.    Defendants' acts have caused and will continue to cause substantial irreparable

14  harm that cannot be fully compensated or measured in money damages to Ubiquiti unless further

15  infringement by Defendants is enjoined by this Court.

16      148.    Pursuant to 17 U.S.C. § 502, Defendants are entitled to preliminary and permanent

17  injunctions prohibiting further infringement of Ubiquiti's copyrights.

18      149.    Pursuant to 17 U.S.C. § 504, Ubiquiti is entitled to the amount of its actual

19  damages incurred as a result of the infringement, in such amount as is shown by appropriate

20  evidence upon the trial of this case.

21      150.    Pursuant to 17 U.S.C. § 505, Ubiquiti is also entitled to recover its attorneys' fees

22  and costs of suit.

23                      **SEVENTH CAUSE OF ACTION**

24          **(Contributory Copyright Infringement by All Defendants)**

25      151.    Ubiquiti repeats and realleges each and every allegation set forth in paragraphs 1

26  to __ above as if fully set forth herein.

27

28

COMPLAINT ISO PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER      29

1   152.   Through their conduct alleged herein, Defendant knowingly and systematically

2   induced, caused, materially contributed to and participated in the infringement of Ubiquiti's

3   copyrighted AirOS® operating system.

4   153.   Each unauthorized reproduction, derivative work, and distribution to the public of

5   Ubiquiti's copyrighted airOS® operating system constitutes an individual act of infringement of

6   Ubiquiti's exclusive rights under the Copyright Act, 17 U.S.C. § 101 *et seq.*

7   154.   Defendants' conduct has been and continues to be intentional, willful, and with

8   full knowledge of Ubiquiti's copyright interests and the infringement thereof and constitutes

9   willful, contributory infringement of Ubiquiti's exclusive rights in the copyrighted airOS®

10  operating system.

11  155.   Pursuant to 17 U.S.C. § 502, Defendants are entitled to preliminary and permanent

12  injunctions prohibiting further infringement of Ubiquiti's copyrights.

13  156.   Pursuant to 17 U.S.C. § 504, Ubiquiti is entitled to the amount of its actual

14  damages incurred as a result of the infringement, in such amount as is shown by appropriate

15  evidence upon the trial of this case.

16  157.   Pursuant to 17 U.S.C. § 505, Ubiquiti is also entitled to recover its attorneys' fees

17  and costs of suit.

18  **EIGHTH CAUSE OF ACTION**

19  **(Vicarious Copyright Infringement by All Defendants)**

20  158.   Ubiquiti repeats and realleges each and every allegation set forth in paragraphs 1

21  to ___ above as if fully set forth herein.

22  159.   On information and belief, Defendants have the right and ability to control the

23  unauthorized reproduction and/or adaptation of Ubiquiti's copyrighted airOS® operating system.

24  160.   On information and belief, Defendant received a direct financial and economic

25  benefit from the infringement of Ubiquiti's airOS operating system by, among other things,

26  selling products containing the airOS® operating system to unsuspecting consumers. When

27  consumers or end users operate Defendants' counterfeit products, they necessarily operate,

28  display, and reproduce copies of the infringing airOS operating system software, which constitute

1  acts of infringement in violation of Ubiquiti's exclusive rights under the Copyright Act, 17 U.S.C.

2  § 101 *et seq.* By offering their counterfeit products for sale, Defendants induce and or contribute

3  to the infringement of Ubiquiti's copyright rights, in violation of 17 U.S.C. § 106.

4      161.    Defendants' conduct has been and continues to be intentional, willful, and with

5  full knowledge of Ubiquiti's copyright interests and the infringement thereof and constitutes

6  willful, vicarious infringement of Ubiquiti's exclusive rights in the copyrighted airOS operating

7  system.

8      162.    Pursuant to 17 U.S.C. § 502, Defendants are entitled to preliminary and permanent

9  injunctions prohibiting further infringement of Ubiquiti's copyrights.

10      163.    Pursuant to 17 U.S.C. § 504, Ubiquiti is entitled to the amount of its actual

11  damages incurred as a result of the infringement, in such amount as is shown by appropriate

12  evidence upon the trial of this case.

13      164.    Pursuant to 17 U.S.C. § 505, Ubiquiti is also entitled to recover its attorneys' fees

14  and costs of suit.

15  **NINTH CAUSE OF ACTION**

16  **(Unfair Competition Under Cal. Bus. & Prof. Code § 17200 et seq.)**

17      165.    Ubiquiti repeats and realleges each allegation set forth in paragraphs 1 through __

18  above as if fully set forth herein.

19      166.    Defendants' attempt to steal Ubiquiti's corporate identity constitute unlawful and

20  fraudulent business acts or practices, as they are likely to deceive the public into thinking that

21  there is an affiliation between Ubiquiti and Defendants, and/or that Ubiquiti endorses Defendants'

22  products and/or business practices.

23      167.    Defendants' use of the AIROS, AIRMAX, UBIQUITI, UBIQUITI NETWORKS,

24  and Ubiquiti Logo marks, as well as the Ubiquiti Networks, Inc. corporate name and address is

25  likely to deceive consumers as to the source of Defendants' counterfeit products and is likely to

26  cause consumers to be confused or mistaken into believing that there is a relationship between

27  Defendants and Ubiquiti or that Defendants' products are affiliated with or sponsored by

28  Ubiquiti.

1    168.    The above-described acts and practices by Defendants are likely to mislead or

2    deceive the general public and therefore constitute fraudulent business practices in violation of

3    California Business & Professions Code § 17200, *et seq.*

4    169.    The above-described acts constitute unfair competition under Section 43(a) of the

5    Lanham Act, 15 U.S.C. § 1125(a), counterfeiting under Section 32 of the Lanham Act, 15 U.S.C.

6    § 1114, trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114, and

7    copyright infringement under 17 U.S.C. § 101, *et seq.* and are therefore unlawful acts in violation

8    of California Business & Professions Code § 17200, *et seq.*

9    170.    Defendants acted willfully and intentionally in developing and offering its

10   counterfeit products, with full knowledge of Ubiquiti's prior rights in the AIROS®, AIRMAX®,

11   UBIQUITI™, UBIQUITI NETWORKS™, and Ubiquiti Logo marks, as well as the Ubiquiti

12   Networks, Inc. corporate name and with an intent to deceive customers into believing that there is

13   an affiliation between Defendants and Ubiquiti or between Defendants' products and Ubiquiti's

14   products.

15   171.    The unlawful and fraudulent business practices of Defendants described above

16   present a continuing threat to, and are meant to deceive members of the public in that Defendants

17   continue to promote their products by wrongfully trading on the goodwill of Ubiquiti.

18   172.    As a direct and proximate result of these acts, Defendants have received, and will

19   continue to profit from, the strength of the Ubiquiti brand.

20   173.    As a direct and proximate result of Defendants' wrongful conduct, Ubiquiti has

21   been injured in fact and has lost money and profits, and such harm will continue unless

22   Defendants' acts are enjoined by the Court. Ubiquiti has no adequate remedy at law for

23   Defendants' continuing violation of Ubiquiti's rights.

24   174.    Defendants should be required to restore to Ubiquiti any and all profits earned as a

25   result of its unlawful and fraudulent actions, or provide Ubiquiti with any other restitutionary

26   relief as the Court deems appropriate.

27

28

1

## TENTH CAUSE OF ACTION

2

### (False Advertising Under Cal. Bus. & Prof. Code § 17500)

3      175.   Ubiquiti repeats and realleges each allegation set forth in paragraphs 1 through __

4  above as if fully set forth herein.

5      176.   Defendants' false and misleading representations of fact, as described above,

6  constitute violations of California Business and Professions Code § 17500 on the grounds that

7  Defendants misrepresent to the public ownership rights in the AIROS, AIRMAX, UBIQUITI,

8  UBIQUITI NETWORKS, and Ubiquiti Logo marks, and such representations are likely to cause

9  or have caused damage to Ubiquiti.

10     177.   Defendants knew or should have known that these representations, described

11  above, were false and misleading.

12     178.   Ubiquiti and other members of the general public have no other adequate remedy

13  of law in that Defendants' false and misleading advertisements, as described above, are likely to

14  cause confusion among the consuming public. Defendants' actions have damaged, and will

15  continue to damage, Ubiquiti's market, reputation, and goodwill, and may discourage current and

16  potential customers from dealing with Ubiquiti. Such irreparable harm will continue until and

17  unless Defendants are restrained and enjoined during the pendency of this action and thereafter.

18     179.   As a result of Defendants' false advertising as set forth above, Defendants have

19  been unjustly enriched, the exact amount of which will be proven at trial.

20

## ELEVENTH CAUSE OF ACTION

21

### (Common Law Infringement and Unfair Competition)

22     180.   Ubiquiti repeats and realleges each allegation set forth in paragraphs 1 through __

23  above as if fully set forth herein.

24     181.   Defendants' conduct, described above, in counterfeiting Ubiquiti products

25  constitutes trademark infringement and unfair competition under California common law.

26     182.   Ubiquiti has valid and protectable registered rights in the AIROS®, AIRMAX®,

27  UBIQUITI™, UBIQUITI NETWORKS™, and Ubiquiti Logo trademarks since prior to

28  Defendants' first use of them.

1    183.   Defendants had actual knowledge of Ubiquiti's ownership and use of the

2  AIROS®, AIRMAX®, UBIQUITI™, UBIQUITI NETWORKS™, and Ubiquiti Logo marks

3  prior to their adoption and use of these marks on counterfeit Ubiquiti products.  Indeed,

4  Defendants began using the marks specifically because they had achieved a measure of

5  international recognition and goodwill from which Defendants intended to profit.

6    184.   Ubiquiti has not authorized Defendants to use the AIROS®, AIRMAX®,

7  UBIQUITI, UBIQUITI NETWORKS, or Ubiquiti Logo marks in connection with their

8  counterfeit products.

9    185.   Defendants unauthorized use of the AIROS, AIRMAX, UBIQUITI, UBIQUITI

10  NETWORKS, and Ubiquiti Logo marks, as well as the Ubiquiti Networks, Inc. corporate name

11  and address, is likely to deceive consumers as to the origin of Defendants' products and is likely

12  to cause consumers to believe that there is a relationship between Defendants and Ubiquiti and/or

13  that Defendants are selling Ubiquiti's genuine products constitutes trademark infringement and

14  unfair competition under California common law.

15    186.   Upon information and belief, as a result of Defendants' unauthorized use of the

16  AIROS, AIRMAX, UBIQUITI, UBIQUITI NETWORKS, and Ubiquiti Logo marks, as well as

17  the Ubiquiti Networks, Inc. corporate name and address, Defendants have received and will

18  continue to receive substantial profits to which they are not entitled, and Ubiquiti has or will

19  suffer actual monetary damages, including lost profits and impairment of the value of the

20  AIROS®, AIRMAX®, UBIQUITI™, UBIQUITI NETWORKS™, and Ubiquiti Logo marks, as

21  well as the Ubiquiti Networks, Inc. corporate name.

22    187.   As a direct and proximate result of Defendants' wrongful conduct, Ubiquiti has

23  been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts,

24  and unless enjoined by the Court, Ubiquiti will suffer further harm to its name, reputation and

25  goodwill.  This harm constitutes an injury for which Ubiquiti has no adequate remedy at law.

26    188.   On information and belief, Defendants have acted with full knowledge of

27  Ubiquiti's rights and with the intention to usurp such rights and therefore its aforementioned acts

28  are willful and intentional.

1

## TWELFTH CLAIM FOR RELIEF

2

### (Libel)

3          189.    Ubiquiti repeats and realleges each allegation set forth in paragraphs 1 through __

4    above as if fully set forth herein.

5          190.    Defendants' statements as averred in Paragraphs __-__ constitute false and

6    intentionally disparaging statements of fact to third parties that have resulted in pecuniary loss to

7    Ubiquiti, for which it is entitled to recover damages in an amount to be proven at trial.  Ubiquiti is

8    informed and believes, and on that basis avers, that Defendants acted with actual malice in

9    making and disseminating the statements described herein.

10

## THIRTEENTH CAUSE OF ACTION

11

### (Violation of the Tariff Act Under 19 U.S.C. § 1526)

12          191.    Ubiquiti repeats and realleges each allegation set forth in paragraphs 1 through __

13    above as if fully set forth herein.

14          192.    As described above, Defendants have imported and are continuing to import into

15    the United States products manufactured by or for Defendants in Hong Kong.

16          193.    These products bear Ubiquiti's trademarks, including the AIROS® and

17    AIRMAX® marks which have been registered by the USPTO.

18          194.    Ubiquiti is a citizen and resident of the United States and owns these trademarks.

19    Ubiquiti's trademark registrations are attached hereto as Exhibit C.

20          195.    The importation of the counterfeit goods was and is without Ubiquiti's

21    authorization or consent.

22          196.    Because the unlawfully imported goods are counterfeit goods, Ubiquiti is entitled

23    to seizure and destruction of the merchandise pursuant to 19 U.S.C. § 1526(e).

24

## PRAYER FOR RELIEF

25          WHEREFORE, Ubiquiti prays for relief as follows:

26          1.    That judgment be entered in favor of Ubiquiti and against Defendants on each and

27    every Cause of Action of this Complaint;

28

1    2.    For entry of an order and judgment requiring that Defendants assign the UBIQUITI

2    trademark rights to Plaintiff;

3    3.    For entry of an order and judgment requiring that Defendants and their officers,

4    agents, servants, employees, owners and representatives, and all other persons, firms or

5    corporations in active concert or participation with them, be enjoined during the pendency of this

6    action and permanently thereafter from (a) using in any manner any trademark owned by

7    Ubiquiti, including but not limited to AIROS®, AIRMAX®, UBIQUITI™, UBIQUITI

8    NETWORKS™, and Ubiquiti Logo marks, or any name or mark that wholly incorporates any

9    trademark owned by Ubiquiti, including but not limited to AIROS®, AIRMAX®, UBIQUITI™,

10   UBIQUITI NETWORKS™, and Ubiquiti Logo marks, or is confusingly similar to or a colorable

11   imitation of any trademark owned by Ubiquiti, including but not limited to AIROS®,

12   AIRMAX®, UBIQUITI™, UBIQUITI NETWORKS™, and Ubiquiti Logo marks; and (b) doing

13   any act or thing calculated or likely to cause confusion or mistake in the minds of the members of

14   the public, or prospective customers of Ubiquiti's products or services, as to the source of the

15   products or services offered for sale, distributed, or sold, or likely to deceive members of the

16   public, or prospective customers, into believing that there is some connection between Ubiquiti

17   and Defendants any other entity owned by or associated with Defendants; (c) further infringing

18   any trademark owned by Ubiquiti and damaging Ubiquiti's goodwill; (d) further disparaging

19   Ubiquiti, its officers and/or its directors (e) otherwise competing unfairly with Ubiquiti in any

20   manner; (f) assisting, aiding or abetting any other person or business entity in engaging in or

21   performing any of the activities referred to in subparagraphs (a) through (d).

22   4.    For entry of an order and judgment directing Kozumi to issue a corrective action

23   letter to all customers to whom Kozumi has sold products bearing the UBIQUITI mark, notifying

24   them that the products infringed upon Ubiquiti's lawful trademarks;

25   5.    For entry of an order and judgment directing Kozumi, pursuant to 15 U.S.C.

26   § 1116(a), to file with this Court and serve upon Ubiquiti within thirty (30) days after entry of the

27   injunction, a report in writing under oath setting forth in detail the manner and form in which

28

1  Kozumi has complied with the injunction and ceased all offering of products and services under

2  the UBIQUITI or UBIQUITI mark as set forth above;

3      6.   For entry of an order and judgment directing Kozumi, pursuant to 15 U.S.C. § 1118,

4  to deliver up for destruction, or to show proof of said destruction or sufficient modification to

5  eliminate the infringing matter, all catalogs, articles, packages, wrappers, products, displays,

6  labels, signs, vehicle displays or signs, circulars, kits, packaging, letterhead, business cards,

7  promotional items, clothing, literature, sales aids, receptacles or other matter in the possession,

8  custody, or under the control of Kozumi or its agents bearing the mark UBIQUITI in any manner,

9  or any mark that is confusingly similar to or a colorable imitation of the UBIQUITI trademark,

10  including without limitation the UBIQUITI mark, both alone and in combination with other

11  words or terms;

12      7.   A judgment in the amount of Kozumi's profits, Ubiquiti's actual damages, and the

13  costs of this action pursuant to 15 U.S.C. § 1117 and;

14      8.   That the Court award enhanced damages under 15 U.S.C. § 1117 and punitive

15  damages under state law as appropriate;

16      9.   That the Court award actual damages pursuant to 17 U.S.C. § 504;

17      10.   That the Court award actual and special damages for the defamatory statements

18  made by Defendants;

19      11.   That the Court award punitive damages for the willful defamatory statements made

20  by Defendants;

21      12.   That the Court award Ubiquiti reasonable attorney's fees;

22      13.   That the Court grant such other and further relief as it deems just and proper.

23

24  DATED: May 18, 2012        MORRISON & FOERSTER LLP

25

26      By: Jennifer Lee Taylor

27      Attorneys for Plaintiff
    UBIQUITI NETWORKS, INC.

28

1    Pursuant to Federal Rule of Civil Procedure 38(b) and Local Rule 3-6, plaintiff Ubiquiti,

2    Inc. hereby demands a trial by jury in this action.

3

4    DATED: May 18, 2012                        MORRISON & FOERSTER LLP

5
                                                By:
6                                                     Jennifer Lee Taylor

7                                                     Attorney for Plaintiff
                                                     UBIQUITI NETWORKS, INC.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## TXu 1-795-146

**Effective date of
registration:**

April 3, 2012

---

## Title

**Title of Work:** AirOS 5.2.1

## Completion/Publication

**Year of Completion:** 2010

## Author

■ **Author:** Ubiquiti Networks, Inc.

**Author Created:** computer program

**Work made for hire:** Yes

**Citizen of:** United States          **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** Ubiquiti Networks, Inc.

91 E. Tasman Drive, San Jose, CA, 95035, United States

## Limitation of copyright claim

**Material excluded from this claim:** computer program, Previous versions and licensed-in materials

**New material included in claim:** new and revised computer code

## Certification

**Name:** Jessica Zhou, Ubiquiti Networks, Inc.

**Date:** April 3, 2012

**Applicant's Tracking Number:** 70730-50001.00

---

**Registration #:** TXU001795146

**Service Request #:** 1-747770041



Morrison & Foerster LLP
Jennifer Lee Taylor
425 Market Street
San Francisco, CA 94105-2482  United States

Exhibit B

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## TXu 1-795-147

**Effective date of registration:**

April 3, 2012

---

## Title
**Title of Work:** AirOS 5.3

## Completion/Publication
**Year of Completion:** 2011

## Author
■    **Author:** Ubiquiti Networks, Inc.

**Author Created:** computer program

**Work made for hire:** Yes

**Citizen of:** United States       **Domiciled in:** United States

## Copyright claimant
**Copyright Claimant:** Ubiquiti Networks, Inc.

91 E. Tasman Drive, San Jose, CA, 95035, United States

## Limitation of copyright claim
**Material excluded from this claim:** computer program, Previous versions and licensed-in materials

**New material included in claim:** computer program, New and revised computer code

## Certification
**Name:** Jessica Zhou, Ubiquiti Networks, Inc.

**Date:** April 3, 2012

**Applicant's Tracking Number:** 70730-50001.00

---

**Registration #:**  TXU001795147
**Service Request #:**  1-747770159



Morrison & Foerster LLP
Jennifer Lee Taylor
425 Market Street
San Francisco, CA 94105-2482  United States

# Exhibit C

# UNITED STATES CERTIFICATE OF REGISTRATION

## AIROS & DESIGN

REG. NO. 3746223

# United States of America

## United States Patent and Trademark Office

# $\widehat{Air}$OS

**Reg. No. 3,746,223**
Registered Feb. 9, 2010

**Int. Cl.: 9**

**TRADEMARK**
**PRINCIPAL REGISTER**

UBIQUITI NETWORKS, INC. (CALIFORNIA CORPORATION), DBA UBIQUITI NETWORKS
495-499 MONTAGUE EXPWY
MILPITAS, CA 95035

FOR: COMPUTER OPERATING PROGRAMS AND COMPUTER OPERATING SYSTEMS; COMPUTER SOFTWARE FOR COMMUNICATING WITH USERS OF HAND-HELD COMPUTERS; COMPUTER SOFTWARE FOR WIRELESS CONTENT DELIVERY, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 1-29-2008; IN COMMERCE 1-29-2008.

THE MARK CONSISTS OF THE WORD "AIR" AND THE SOUND WAVE DESIGN IN BLUE AND THE ACRONYM "OS" IN BLACK.

THE COLOR(S) BLUE AND BLACK IS/ARE CLAIMED AS A FEATURE OF THE MARK.

SER. NO. 77-726,644, FILED 4-30-2009.

PATRICIA EVANKO, EXAMINING ATTORNEY



David J. Kappos

Director of the United States Patent and Trademark Office

## UNITED STATES CERTIFICATE OF REGISTRATION

## AIRMAX

REG. NO. 3837240

# United States of America
## United States Patent and Trademark Office

# AirMax

**Reg. No. 3,837,240**

**Registered Aug. 24, 2010**

**Int. Cl.: 9**

**TRADEMARK**

**PRINCIPAL REGISTER**

UBIQUITI NETWORKS, INC. (CALIFORNIA CORPORATION), DBA UBIQUITI NETWORKS
91 E. TASMAN DRIVE
SAN JOSE, CA 95134

FOR: TELECOMMUNICATIONS AND DATA NETWORKING HARDWARE, NAMELY, DEVICES FOR TRANSPORTING AND AGGREGATING VOICE, DATA, AND VIDEO COMMUNICATIONS ACROSS MULTIPLE NETWORK INFRASTRUCTURES AND COMMUNICATIONS PROTOCOLS, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 7-1-2009; IN COMMERCE 7-1-2009.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 77-900,160, FILED 12-23-2009.

HEATHER BIDDULPH, EXAMINING ATTORNEY



Director of the United States Patent and Trademark Office

# UNITED STATES CERTIFICATE OF REGISTRATION

UBNT

REG. NO. 3856016

# United States of America
## United States Patent and Trademark Office

# UBNT

**Reg. No. 3,856,016**

**Registered Oct. 5, 2010**

**Int. Cl.: 9**

**TRADEMARK**

**PRINCIPAL REGISTER**

UBIQUITI NETWORKS, INC. (CALIFORNIA CORPORATION), DBA UBIQUITI NETWORKS
91 E. TASMAN DRIVE
SAN JOSE, CA 95035

FOR: BROADBAND WIRELESS EQUIPMENT, NAMELY, TELECOMMUNICATIONS BASE STATION EQUIPMENT FOR CELLULAR AND FIXED NETWORKING AND COMMUNICATIONS APPLICATIONS; COMMUNICATIONS SOFTWARE FOR CONNECTING USERS ON WIRELESS NETWORKS; WIRELESS ACCESS POINT (WAP) DEVICES; DEVICES FOR WIRELESS RADIO TRANSMISSION; INDUSTRIAL WIRELESS POINT-TO-MULTIPOINT RADIO; WIRELESS TRANSMITTERS AND RECEIVERS, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 3-23-2001; IN COMMERCE 3-23-2001.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 77-906,575, FILED 1-7-2010.

HEATHER BIDDULPH, EXAMINING ATTORNEY



Director of the United States Patent and Trademark Office

UNITED STATES CERTIFICATE OF REGISTRATION

AIRGRID

REG. NO. 3888037

# United States of America

## United States Patent and Trademark Office

# AirGrid

**Reg. No. 3,888,037**

**Registered Dec. 7, 2010**

**Int. Cl.: 9**

**TRADEMARK**

**PRINCIPAL REGISTER**

UBIQUITI NETWORKS, INC. (DELAWARE CORPORATION), DBA UBIQUITI NETWORKS, INC., A DELAWARE CORPORATION,
91 E. TASMAN DRIVE
SAN JOSE, CA 95134

FOR: MICROWAVE ANTENNAE; MICROWAVE TRANSMISSION APPARATUS FOR DE-LIVERING RADIO PROGRAMS AND MESSAGES , IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 12-1-2009, IN COMMERCE 12-1-2009.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-TICULAR FONT, STYLE, SIZE, OR COLOR.

SN 77-960,305, FILED 3-16-2010.

HEATHER BIDDULPH, EXAMINING ATTORNEY



David J. Kappos

Director of the United States Patent and Trademark Office

# UNITED STATES CERTIFICATE OF REGISTRATION

## AIRCONTROL

### REG. NO. 3829292

# United States of America
## United States Patent and Trademark Office

# AirControl

**Reg. No. 3,829,292**

**Registered Aug. 3, 2010**

**Int. Cl.: 9**

**TRADEMARK**

**PRINCIPAL REGISTER**

UBIQUITI NETWORKS, INC., INC. (CALIFORNIA CORPORATION), DBA UBIQUITI NETWORKS, INC.,
91 E. TASMAN DRIVE
SAN JOSE, CA 95035

FOR: COMMUNICATIONS SOFTWARE FOR CONNECTING COMPUTER NETWORK USERS; COMPUTER SOFTWARE FOR COMMUNICATING WITH USERS OF HAND-HELD COMPUTERS; COMPUTER SOFTWARE FOR CONTROLLING AND MANAGING ACCESS SERVER APPLICATIONS; COMPUTER SOFTWARE FOR MANAGEMENT OF COMMUNICATION EQUIPMENT, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 10-8-2009; IN COMMERCE 10-8-2009.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SN 77-726,654, FILED 4-30-2009.

TOBY BULLOFF, EXAMINING ATTORNEY



Director of the United States Patent and Trademark Office

UNITED STATES CERTIFICATE OF REGISTRATION

AIRVIEW

REG. NO. 3715098

# United States of America
## United States Patent and Trademark Office

# AirView

**Reg. No. 3,715,098**
Registered Nov. 24, 2009

**Int. Cl.: 9**

**TRADEMARK**
**PRINCIPAL REGISTER**

UBIQUITI NETWORKS, INC. (CALIFORNIA CORPORATION), DBA UBIBUITI NETWORKS
495-499 MONTAGUE EXPWY
MILPITAS, CA 95035

FOR: ELECTRONIC MAGNETOSTRICTIVE EQUIPMENT, NAMELY, A WAVE GENERATOR, WAVE SENSOR AND WAVE ANALYZER, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 2-25-2009; IN COMMERCE 3-18-2009.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 77-726,635, FILED 4-30-2009.

PATRICIA EVANKO, EXAMINING ATTORNEY



David J. Kappos
Director of the United States Patent and Trademark Office

UNITED STATES CERTIFICATE OF REGISTRATION

UNIFI

REG. NO. 4068223

# United States of America
## United States Patent and Trademark Office



**Reg. No. 4,068,223**

**Registered Dec. 6, 2011**

**Int. Cl.: 9**

**TRADEMARK**

**PRINCIPAL REGISTER**

UBIQUITI NETWORKS, INC. (DELAWARE CORPORATION), DBA UBIQUITI NETWORKS, INC., A DELAWARE CORPORATION,
91 E. TASMAN DRIVE
SAN JOSE, CA 95035

FOR: ELECTRONIC TRANSMITTERS AND RECEIVERS FOR ENTERPRISE WIRELESS NETWORKS, NAMELY, TRANSMITTERS AND RECEIVERS OF ELECTRONIC SIGNALS, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 1-15-2011; IN COMMERCE 1-15-2011.

THE MARK CONSISTS OF THE WORD "UNIFI" WITH A DESIGN OF SOUND WAVES EX-TENDING FROM THE DOT OF THE FIRST "I" OVER THE TOP OF THE "NI" LETTERS.

SN 85-100,397, FILED 8-4-2010.

TARA PATE, EXAMINING ATTORNEY



David J. Kappos

Director of the United States Patent and Trademark Office