1    JENNIFER LEE TAYLOR (CA SBN 161368)
     JTaylor@mofo.com
2    COLETTE R. VERKUIL (CA SBN 263630)
     CVerkuil@mofo.com
3    WHITNEY E. MCCOLLUM (CA SBN 253039)
     WMcCollum@mofo.com
4    MORRISON & FOERSTER LLP
     425 Market Street
5    San Francisco, California  94105-2482
     Telephone: 415.268.7000
6    Facsimile: 415.268.7522

7    Attorneys for Plaintiff,
     UBIQUITI NETWORKS, INC.

8

9                        UNITED STATES DISTRICT COURT

10                      NORTHERN DISTRICT OF CALIFORNIA

11                              OAKLAND DIVISION

12

13   UBIQUITI NETWORKS, INC., a Delaware           Case No.      12-CV-2582-CW
     corporation,
14                                                 **UBIQUITI NETWORKS, INC.'S**
                         Plaintiff,                **OPPOSITION TO DEFENDANTS'**
15                                                 **KOZUMI USA CORP. AND HSU**
            v.                                     **WU'S MOTION TO DISMISS FOR**
16                                                 **LACK OF PERSONAL**
     KOZUMI USA CORP., a Florida corporation;      **JURISDICTION**
17   SHAO WEI HSU; LILIA KUNG; DOES ONE
     THROUGH ONE HUNDRED,                          Date:  August 2, 2012
18                                                 Time:  2:00 p.m.
                         Defendants.               Courtroom:  2, 4th Floor
19                                                 Judge:  Hon. Claudia Wilken

20                                                 Complaint filed on May 18, 2012

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 12-CV-2582-CW
sf-3165430

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 1

      A.     About Ubiquiti ................................................................................................. 1

      B.     Ubiquiti's Dealings with Defendants Kozumi and Hsu .......................................... 2

      C.     Discovery of the Full Scope of Defendants' Illegal Activities ............................... 3

      D.     Harm to Ubiquiti ............................................................................................. 7

LEGAL STANDARD ......................................................................................................... 8

ARGUMENT ..................................................................................................................... 9

I.     THIS COURT HAS PERSONAL JURISDICTION OVER HSU AND KOZUMI ........................................................................................................... 9

      A.     Hsu and Kozumi Have Purposefully Directed Activities Towards California. ..................................................................................................... 10

      B.     Ubiquiti's Claim Arises Out of Hsu's Activities in the Forum State .................... 12

      C.     Jurisdiction Over Defendants Is Reasonable ...................................................... 13

CONCLUSION ................................................................................................................ 16

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3    **CASES**

4    *ADO Fin., AG v. McDonnell Douglas Corp.*,
       931 F. Supp. 711 (C.D. Cal. 1996) ................................................................................... 9
5

6    *Ajjarapu v. AE Biofuels, Inc.*,
       728 F. Supp. 2d 1154 (D. Colo. 2010) ........................................................................... 12
7

8    *Ballard v. Savage*,
       65 F.3d 1495 (9th Cir. 1995) .......................................................................................... 12

9    *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*,
       223 F.3d 1082 (9th Cir. 2000) .......................................................................................... 9
10

11   *Brainerd v. Governors of Univ. of Alberta*,
       873 F.2d 1257 (9th Cir. 1989) ........................................................................................ 11

12   *Caruth v. Int'l Psychoanalytical Ass'n*,
       59 F.3d 126 (9th Cir. 1995) ............................................................................................ 15
13

14   *Dole Foods Co., Inc. v. Watts*,
       303 F.3d 1104 (9th Cir. 2002) .................................................................................. 14, 15
15

16   *Facebook Inc. v. Teachbook.com, LLC*,
       No. CV 10-03654 RMW, 2011 WL 1672464 (May 3, 2011) ........................................ 12

17   *Lake v. Lake*,
       817 F.2d 1416 (9th Cir. 1987) .......................................................................................... 9
18

19   *Mavrix Photo, Inc. v. Brand Techs., Inc.*,
       647 F.3d 1218 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1101 (2012) .............................. 8, 9
20

21   *Panavision Int'l, L.P. v. Toeppen*,
       141 F.3d 1316 (9th Cir. 1998) ..................................................................... 10, 11, 12, 14

22   *RAE Sys., Inc. v. TSA Sys., Ltd.*,
       No. 04-2030, 2005 WL 1513124 (N.D. Cal. June 24, 2005) ........................................... 9
23

24   *Rio Props., Inc. v. Rio Int'l Interlink*,
       284 F.3d 1007 (9th Cir. 2002) ........................................................................................ 11
25

26   *Rocawear Licensing, LLC v. Pacesetter Apparel Group*,
       No. CV 06-3093 CJC, 2006 WL 5878140 (S.D. Cal. Jul. 25, 2006) ............................. 14

27   *Sher v. Johnson*,
       911 F.2d 1357 (9th Cir. 1990) ........................................................................................ 13
28

*Sinatra v. Nat'l Enquirer, Inc.,*
   854 F.2d 1191 (9th Cir. 1988)........................................................................................ 13, 15

**STATUTES**

Cal. Civ. Proc. Code § 410.10............................................................................................ 8

**OTHER AUTHORITIES**

Fed. R. Civ. P. Rule 4(k)(1)(A)............................................................................................ 8

1

## INTRODUCTION

2      The basis for personal jurisdiction in this case is clear. Defendants Shao Wei "William

3 Wu" Hsu ("Hsu") and Kozumi USA Corp. ("Kozumi") (collectively "Defendants") reached out to

4 Ubiquiti in 2008 to become a distributor of Ubiquiti products. When Ubiquiti terminated that

5 distribution agreement, Defendants began an active counterfeiting scheme to continue to profit

6 from Ubiquiti's brand name and goodwill, going so far as to acquire an Argentinean trademark

7 registration for Ubiquiti Networks to keep the counterfeit operation alive. Then, when Ubiquiti's

8 CEO tried to get Ubiquiti's trademark back, Defendants used the trademark as a basis to attempt

9 to extort ever-larger sums of money from Ubiquiti. These collective acts establish that

10 Defendants purposefully availed themselves of this forum.

11      The Court found that Ubiquiti made a prima facie showing of jurisdiction against

12 Defendants (Dkt. 17, Order Denying Ex Parte Application For Temporary Restraining Order

13 ("May 25 Order"), at 13), and after hearing Defendants arguments to the contrary, determined

14 that Ubiquiti is likely to succeed in establishing personal jurisdiction. (Dkt. 41, Order Granting,

15 In Part, Ubiquiti's Application for Temporary Restraining Order ("June 20 Order"), at 29.)

16 Defendants do not present any new arguments against personal jurisdiction, and even rely on

17 Hsu's TRO Declaration in support of their motion to dismiss. (Dkts. 24 and 40.) Because

18 nothing has changed since the June 20 Order was issued, Defendants' Motion to Dismiss should

19 be denied.

20

## BACKGROUND

21     **A.    About Ubiquiti**

22      Ubiquiti, based in San Jose, is a multi-billion dollar public corporation that grew from a

23 boot-strapped start-up in 2005 and is now known throughout the world for bringing wireless

24 internet access to emerging markets through quality, innovative products at an affordable price.

25 (Declaration of B. Moore In Support of Plaintiff's Opposition to Defendants' Motion to Dismiss

26 ("Moore Decl.") ¶ 2.) The company's founding goal was to bring the Internet to rural and

27 underdeveloped areas that could not get Internet access through traditional wired means. (*Id.*)

28

1    Ubiquiti does not have a direct sales force, but instead relies on the Ubiquiti

2  Community—a large, growing and engaged community of network operators, service providers

3  and distributors—to drive market awareness and demand for its products. This community-

4  propagated viral marketing enables Ubiquiti to reach underserved and underpenetrated markets

5  more efficiently and cost effectively than is possible through traditional sales models. (*Id.* ¶ 10.)

6    An integral part of the Ubiquiti Community is the Ubiquiti Distributors. Distributors enter

7  into contracts with Ubiquiti to distribute products in specified regions throughout the world and

8  provide Ubiquiti products to local resellers in those regions. The resellers sell them to end users.

9  To qualify as a Distributor, a company must order a minimum amount of Ubiquiti products per

10  quarter (depending on the distribution area) and sign a Distribution Agreement with Ubiquiti.

11  Distributors are listed on the Ubiquiti website under the "Distributors & Master Resellers"

12  heading. (*Id.* ¶¶ 8-9.)

13    **B.    Ubiquiti's Dealings with Defendants Kozumi and Hsu**

14    Kozumi, a former distributor of Ubiquiti wireless products, was incorporated in Florida by

15  Defendant Hsu, who is its sole officer and director, as well as its registered agent. (Declaration of

16  Whitney E. McCollum In Support of Plaintiff's Opposition to Motion to Dismiss ("McCollum

17  Decl."), Ex. A.) According to its website, Kozumi has eight offices throughout the world.[1]

18  (McCollum Decl. Ex. B.) Hsu manages Kozumi's distribution and manufacturing activities from

19  his south Florida home and/or offices. (Moore Decl. ¶ 18.)

20    Hsu sought out Ubiquiti in April 2008, introducing himself as the "largest CPE [Customer

21  Provided Equipment] provider of South America." He asked Ubiquiti to give Kozumi rights to

22  "the distribution of [Ubiquiti's] new products" for the Latin American market. (Moore Decl.

23  ¶ 11, Ex. A.) Hsu expressed an interest in distributing Ubiquiti's NanoStation2 and NanoStation5

24  products, and requested an order of 5000 NanoStation2 and 1000 NanoStation5 products. (*Id.*

25

26    [1] Kozumi has recently updated its website to remove seven of the eight Kozumi office
locations, presumably to support its argument that it is a small company. But as of May 17, 2012,
27  the day before this lawsuit was filed, Kozumi proudly boasted its international presence.
McCollum Decl. Ex. B.)

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 12-CV-2582-CW
sf-3165430

2

1    ¶ 12.)  After a number of email exchanges with Ben Moore, Ubiquiti's Vice President of Business

2    Development, Ubiquiti agreed to permit Kozumi to be a Latin American Distributor.  (*Id.* ¶ 13.)

3         A Distribution Agreement was signed on May 16, 2008 by Hsu on behalf of Kozumi and

4    by Ben Moore on behalf of Ubiquiti.  (*Id.* ¶ 14, Ex. D.)  It clearly states that Ubiquiti owns all

5    rights to the Ubiquiti Networks name and trademark:

6              Distributor is authorized to use Ubiquiti Networks name and
               trademark through its sales and marketing initiative – **The**
7              **ownership of such mentioned name and trademark will remain**
               **Ubiquiti Networks property**.
8

9    (*Id.* ¶ 16, Ex. D (emphasis added).)

10        Once a distributor, Kozumi began purchasing Ubiquiti-branded products from Ubiquiti at

11   wholesale prices and promoting and selling them in its Latin American distribution channels,

12   specifically Argentina and Paraguay.  In June 2009, Hsu notified Ubiquiti that Kozumi had

13   changed its shipping address to Kozumi's corporate address in Miami, and requested all future

14   products be shipped to that address.  (*Id.* ¶ 18, Ex. F.)  While a Ubiquiti distributor, Hsu placed 12

15   orders with Ubiquiti, for a total of $1,487,891.50 in products.  (*Id.* ¶ 23.)

16        In mid-September 2009, Ben Moore visited the Kozumi website and discovered that

17   Kozumi was offering products that appeared to be copycats of Ubiquiti's products, using very

18   similar packaging and graphics.  (*Id.* ¶ 21.)  Based on a concern that Kozumi illegally copied

19   Ubiquiti's designs and was trying to convert Ubiquiti customers to Kozumi customers, Ubiquiti

20   terminated Kozumi's distributorship.  (*Id.*)

21        **C.    Discovery of the Full Scope of Defendants' Illegal Activities**

22        In 2011, Ubiquiti was contacted by two of its distributors in Argentina regarding

23   suspicious looking "Ubiquiti" products.  (*Id.* ¶¶ 29-30.)  Around the same time, a Ubiquiti

24   distributor in China contacted Ubiquiti and informed them that a company in China, Hoky

25   Technologies, was manufacturing counterfeit Ubiquiti products.  (*Id.* ¶ 31.)  Once Ubiquiti

26   confirmed the products being manufactured by Hoky were counterfeits, it contacted a Chinese

27   law firm who worked with the Public Security Bureau to shut down Hoky's facility.  (*Id.* ¶ 33.)

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 12-CV-2582-CW
sf-3165430

3

1       Kenny Deng, the owner of the Hoky facility, was released at the end of 2011, and shortly

2  after his release, the Hoky facility reopened.  (Moore Decl. ¶ 35.)  It is once again making

3  counterfeit Ubiquiti products and, through Defendants, is selling these products in South America

4  and throughout the world.  (*Id*. ¶ 38.)  On April 4, 2012, Ubiquiti obtained Argentinean customs

5  forms detailing three separate shipments into Argentina listing "Kozumi" as the importer, and

6  suspiciously low-priced "Ubiquiti" products as the contents.  (*Id*. ¶ 37, Ex. Q.)  Among the three

7  shipments, at least 5,900 "Ubiquiti" products were listed as being imported by Kozumi.  (*Id.*)

8  One of the shipments was routed through the Everglades Port in Fort Lauderdale, Florida.  (*Id*.)

9  Then, on April 20, 2012, in response to messages sent by Ben Moore to Ubiquiti Distributors

10  warning them of the counterfeit goods, Ubiquiti learned of counterfeit products being sold in at

11  least Kosovo and Albania that "have [Ubiquiti] software and 'look very similar to [Ubiquiti].'"

12  (*Id.* ¶ 38, Ex. R.)  In addition, Ubiquiti recently received a copy of a purchase order in the

13  Chinese case against Hoky showing that Syntronic S.A., one of Defendant Hsu's Argentinean

14  companies, ordered 15,000 counterfeit Ubiquiti products, valued at $680,000, to be shipped from

15  Hoky to Paraguay.  (McCollum Decl. Ex. C.)

16       Ubiquiti first learned of Hsu's ownership of the Argentinean UBIQUITI NETWORKS &

17  Design trademark registration when Deng was released from prison in China.  Since then,

18  Ubiquiti has determined that Hsu is the mastermind behind a worldwide counterfeiting scheme.

19  In fact, Ubiquiti recently learned that on January 1, 2011, Defendant Hsu signed a letter on behalf

20  of Syntronic in which he stated: "We request that this letter serve as notification to all customs

21  authorities that Syntronic S.A. has authorized Hoky Technology Ltd. [to] ***manufacture and***

22  ***export*** Ubiquiti Networks and UBNT products."[2]  (McCollum Decl. Ex. D (emphasis added).)

23       Part of Hsu's scheme included fraudulently acquiring registrations for various Ubiquiti

24  trademarks.  For example, Hsu acquired an Argentinean registration for UBIQUITI NETWORKS

25  & Design from Daniel Alejandro Pons and Guillermo Cristiani, owners of a former Ubiquiti

26

27       [2] Defendant Hsu has never claimed any rights in the UBNT mark, even though he purported to authorize the manufacture and export of UBNT products.

28

1   reseller.  (McCollum Decl. Ex. E.)  In the United States, Hsu's former wife Lilia Kung filed an

2   application (Serial No. 85/350,180) to register the mark UBIQUITI.  (McCollum Decl. Ex. F.)

3   The e-mail address associated with the filing is Hsu's e-mail address (williamhsu@hotmail.com),

4   and the physical address is 6960 NW 50th Street, Miami, Florida 33166, which is Kozumi's

5   headquarters.  (McCollum Decl. Ex. B.)

6        Once Ubiquiti learned that Hsu had obtained the UBIQUITI NETWORKS & Design

7   registration in Argentina, Ubiquiti's CEO, Robert Pera, emailed Hsu and his brother Daniel Hsu

8   (a/k/a Shao Xian Hsu) expressing Mr. Pera's (mistaken) understanding that the Hsus were not

9   aware that they were purchasing counterfeit Ubiquiti products from Hoky.  Mr. Pera asked for the

10  Hsus' assistance in "transferring all Ubiquiti Networks related trademarks registered in Argentina

11  over to Ubiquiti Networks ASAP as a sign of good faith."  (Declaration of Patrick Jabbaz In

12  Support of Plaintiff's Opposition to Motion to Dismiss ("Jabbaz Decl.") ¶ 3, Ex. A.)

13       Hsu responded to Mr. Pera that Kozumi had "no other option" than to buy products from

14  Hoky after Ubiquiti ended its distributorship with Kozumi.  Hsu stated that he "acquired the

15  [Ubiquiti] brand from the company Ditelco" in Argentina, and "had to purchase Ditelco for USD

16  350K just for the brand."  Hsu claimed he had "good intentions to cooperate with Ubiquiti" but

17  had lost $1.2 million as a result of the shut-down of the Hoky factory.  (Jabbaz Decl. ¶ 3, Ex. A.)

18       Thereafter, Hsu changed his tone, sending another email to Mr. Pera indicating that he and

19  Kenny Deng (the owner of Hoky) were working together and had come up with a joint proposal

20  to cover "their losses," which had increased by $1 million to **$2.5 million** since their initial

21  extortion attempt.  Hsu stated that he would be willing to give Ubiquiti back its trademarks in

22  Argentina under the following conditions:

23      • "Ubiquiti must withdraw all legal actions against Kenny in China and must
        guarantee that it will not continue taking legal actions against Kenny Deng or me
24      and my company [in] Argentina in the future after I transfer the trademark back to
        you."
25
        • "Kenny agrees to stop selling any products that uses Ubiquiti trademarks."
26
        • "In the event Ubiquiti agrees we require Ubiquiti to cover our losses of USD 2.5
27      million and I will transfer the trademark to Ubiquiti in Argentina and Kenny will
        sign agreement to stop selling any Ubiquiti trademark product and give you the
28      plastic molds."

1   (Jabbaz Decl. ¶ 4, Ex. B.)  Not only does Hsu admit Hoky is selling counterfeit product that "uses

2   Ubiquiti trademarks," he asks Ubiquiti to cover "their losses" arising from the counterfeiting

3   factory being shut down.  Hsu tells Pera that working directly with Hsu will be "easier and faster"

4   than going through the "legal system of China and Argentina."  (*Id.*)  Hsu even offers to meet

5   Robert in person to discuss Hsu's offer, stating that Hsu is "in the Bay Area these days."  (*Id.*)

6          Hsu sent another e-mail on January 11, 2012, stating there are "many reasons that you

7   should strongly consider settle [sic] your legal issues with Kenny [Deng] ASAP."  Hsu then listed

8   a number of threats that he claimed would be carried out if Ubiquiti refused to pay off Hsu and

9   Deng, including spreading lies about the company that he thought could lead to civil and criminal

10  investigations against Ubiquiti, not to mention significant harm to the reputation of Ubiquiti and

11  its officers.  Hsu concludes:  "Putting [Kenny] in jail will not mean that your problems will be

12  solved." (Jabbaz Decl. ¶ 5, Ex. C.)

13         On March 30, 2012, in an effort to get more information about Hsu's counterfeiting

14  scheme, Mr. Pera responded to Hsu's earlier e-mail, asking Hsu how he came up with his

15  increased $2.5 million dollar "offer," as it had so closely followed Hsu's previous offer of $1.55

16  million ($1.2 million + $350,000).  Hsu responded that the $1.55 million offer was "prior to

17  Kenny's release" and stated that because the Argentina trademark was "key for Kenny's release,"

18  Kenny only wanted to settle "as long as you cover all the looses [sic] we suffered that were

19  $2.50mm (that number includes looses [sic] on materials confiscated, and also taken into

20  consideration our withdrawal of Ubiquiti business)." (Jabbaz Decl. ¶ 6, Ex. D.)  In an April 1,

21  2012 email, Hsu further admits that in addition to the 6,000 counterfeit NanoStation LocoM5

22  products that were confiscated by the Chinese police, also included in Hsu's and Hoky's "losses"

23  are a "large volume of components, housing, materials and PCBA boards" and "a substantial

24  amount on legal fees." (Jabbaz Decl. ¶ 7, Ex. E.)  In essence, Hsu is brashly asking Ubiquiti to

25  reimburse Hsu and Deng for their illegal conduct.

26         On April 2, 2012, Mr. Pera asked Hsu to clarify his "offer" and Hsu responded that same

27  day with the following terms, once again increasing the payoff amount:

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 12-CV-2582-CW                                                                              6
sf-3165430

"1) **$2.5mm** we settle to transfer you the trademark. Sign agreement to stop selling Ubiquiti brand."

"2) **$5.0 mm** I sign contract to exit completely the business of selling Ubiquiti and Zonewave and won't do any business related to [Wireless Internet Service Provider] market for a period of 5 years."

(Jabbaz Decl. ¶ 7, Ex. E.)

Defendant Hsu continues actively to target Ubiquiti. On May 7, 2012, Defendant Hsu sent an email to a former Ubiquiti distributor in an attempt to join forces in "[f]ighting Robert." Hsu brags that in response to his release of a video to the Chinese TV news showing the Chinese mafia "destroying our factory," "Ubiquiti stock fell from $35.99 to $26 in 3 days. They lost around USD 800 million market cap in 3 days. *And this is not over*." (McCollum Decl. Ex. G (emphasis added).)

### D. Harm to Ubiquiti

The international counterfeiting ring orchestrated by Defendants has caused, and will continue to cause, significant harm to Ubiquiti, not only in lost sales but also by lowering the value of the Ubiquiti brand that Ubiquiti has spent years building up worldwide. (Moore Decl. ¶ 41.) Defendants steal Ubiquiti's customer base through deception and then tarnish Ubiquiti's reputation for quality products by providing Ubiquiti customers with cheap counterfeits that Defendants pass off as Ubiquiti products. (*Id.*) This directly harms Ubiquiti, its customers, and its distributors. (*Id.*)

Ubiquiti's reputation is built through word of mouth, which is largely developed by and through the Ubiquiti Community of distributors, resellers, and consumers. (*Id.* ¶ 42.) When a consumer purchases a cheap Kozumi counterfeit product believing it to be a Ubiquiti product, that consumer's complaints go directly back into the Ubiquiti Community, causing other members of the Community to question the Ubiquiti brand. (*Id.*) Because Ubiquiti's sales are tied to the strong Ubiquiti brand, any doubts about the brand will drive down its value, but doubts within the Ubiquiti Community will be particularly detrimental. (*Id.*)

Defendants' counterfeiting also harms Ubiquiti's committed distributors, many of whom are small businesses that count on sales of our products as a significant portion of their revenue.

1   (*Id.* ¶ 47.)  When Defendants are offering counterfeit Ubiquiti products at cutthroat pricing,

2   Ubiquiti's distributors simply cannot compete.  (*Id.*)  In fact, Ubiquiti has recently had

3   distributors in South America and Europe begging Ubiquiti to do something about the

4   counterfeiting because they are losing a lot of business.  (*Id.*)

5          Furthermore, Ubiquiti stands by its generous warranty to replace all defective Ubiquiti

6   products.  (*Id.* ¶ 44.)  This may result in the replacement of counterfeit products because the

7   counterfeit products are such exact copies that distributors of Ubiquiti's genuine products, who

8   manage the return process, cannot tell the difference between the products.  (*Id.*)  Ubiquiti's

9   policy of standing behind its customers contributes to its strong reputation as being customer-

10  focused, but it has direct costs to the company when it replaces counterfeit products with real

11  products at no cost to its customers.  (*Id.*)

12                                    **LEGAL STANDARD**

13         Where no federal statute authorizes personal jurisdiction, the district court applies the law

14  of the state in which the court sits.  Fed. R. Civ. P. 4(k)(1)(A); *Mavrix Photo, Inc. v. Brand*

15  *Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citing *Panavision Int'l, L.P. v. Toeppen,* 141

16  F.3d 1316, 1320 (9th Cir. 1998)), *cert. denied*, 132 S. Ct. 1101 (2012).  California's long-arm

17  statute, Cal. Civ. Proc. Code § 410.10, "is coextensive with federal due process requirements, so

18  the jurisdictional analyses under state law and federal due process are the same."  *Mavrix Photo*,

19  647 F.3d at 1223.  Personal jurisdiction over a nonresident defendant requires that the defendant

20  has "'certain minimum contacts'" with the forum "such that the maintenance of the suit does not

21  offend 'traditional notions of fair play and substantial justice.'"  *Id.* (quoting *Int'l Shoe Co. v.*

22  *Washington,* 326 U.S. 310, 316 (1945)).

23         Personal jurisdiction may be general, which turns on whether a company's contacts with a

24  forum are continuous and systematic, or specific, which occurs when the actions giving rise to the

25  complaint take place in the forum.  Both types of jurisdiction involve questions of fundamental

26  fairness, and both look to a company's purposeful availment of the forum.  Here, Defendants

27  have purposefully availed themselves of this jurisdiction such that exercising specific jurisdiction

28  over them would be the only fair and reasonable resolution of this issue.

1    At the motion to dismiss stage, Ubiquiti need only make a "prima facie showing of

2  jurisdictional facts" to avoid Defendants' motion to dismiss. *Mavrix Photo*, 647 F.3d at 1223;

3  *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987). Ubiquiti more than meets this standard.

4                                    **ARGUMENT**

5  **I.    THIS COURT HAS PERSONAL JURISDICTION OVER HSU AND KOZUMI**

6    Ubiquiti has already made a prima facie showing of specific jurisdiction over Defendants

7  in its TRO application. As the Court noted,

8          "[S]pecific jurisdiction is analyzed using a three-prong test: (1) the non-
           resident defendant must purposefully direct its activities or consummate
9          some transaction with the forum or a resident thereof, or perform some act
           by which it purposefully avails itself of the privilege of conducting
10         activities in the forum, thereby invoking the benefits and protections of its
           laws; (2) the claim must be one which arises out of or results from the
11         defendant's forum-related activities; and (3) the exercise of jurisdiction
           must be reasonable."
12

13  (May 25 Order at 11; June 20 Order at 22 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir.

14  1987).) Although Defendants Kozumi and Hsu have attempted to challenge the facts that

15  Ubiquiti sets forth, "prima facie jurisdictional analysis requires [the court] to accept the plaintiff's

16  allegations as true." *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th

17  Cir. 2000) (reversing order granting motion to dismiss for lack of jurisdiction).

18    The Court has already found that "Ubiquiti has made a prima facie showing that the three

19  requirements for personal specific jurisdiction are met." (May 25 Order at 13.) This was

20  reaffirmed in the Court's June 20 Order. (June 20 Order at 29.) Because Kozumi is the alter ego

21  of Hsu (Dkt. 1, Compl. ¶¶ 10-17), in addition to having jurisdiction over each Defendant

22  individually, this Court also has jurisdiction over both Defendants under the alter ego doctrine,

23  which allows the Court to attribute contacts of each Defendant to the other. *See, e.g., ADO Fin.,*

24  *AG v. McDonnell Douglas Corp.*, 931 F. Supp. 711, 715 (C.D. Cal. 1996) (if a corporation is the

25  alter ego of an individual defendant the Court may "pierce the corporate veil" jurisdictionally and

26  attribute "contacts" accordingly) (citing *Certified Bldg. Prods., Inc. v. NLRB*, 528 F.2d 968, 969

27  (9th Cir. 1976); *see also RAE Sys., Inc. v. TSA Sys., Ltd.*, No. 04-2030, 2005 WL 1513124, at *4

28

1   (N.D. Cal. June 24, 2005) (alter ego allegations that are "beyond 'conclusory'" were sufficient to

2   find one defendant was the alter ego of another at the motion to dismiss stage).

3          Ubiquiti met its initial burden under the specific jurisdiction test in its TRO application

4   (May 25 Order at 13; June 20 Order at 29), and Defendants have failed to come forward with a

5   compelling case that exercise of jurisdiction would be unreasonable.  Accordingly, the Court

6   properly exercised jurisdiction over both Defendants.  (June 20 Order at 29.)  Defendants seek yet

7   another bite at the apple, but offer only the same old arguments, which, once again, fail.

8          **A.     Hsu and Kozumi Have Purposefully Directed Activities Towards California.**

9          In intentional tort cases, such as this one, the "purposeful direction or availment

10  requirement for specific jurisdiction is analyzed under the 'effects test.'"  (June 20, 2012 Order at

11  23 (citing *Dole Foods Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).)  The effects test

12  requires that the defendant allegedly (1) committed an intentional act, (2) expressly aimed at the

13  forum state, (3) causing harm that the defendant knew was likely to be suffered in the forum state.

14  *Id.*

15         In this case, as in *Panavision*, "Kozumi and Hsu engaged in intentional acts which, though

16  not undertaken in California, appear to have injured Ubiquiti which has its principal place of

17  business here."  (June 20, 2012 Order at 24.)  These acts include Defendant Hsu's initial contact

18  with Ubiquiti to become a distributor, Kozumi's orders as a distributor,[3] Kozumi's offering of

19  copycat products—leading to the termination of the distribution relationship, Defendant Hsu's

20  acquisition of the UBIQUITI NETWORKS trademark in Argentina, Defendant Hsu's

21  "authorization" of the manufacture and export of Ubiquiti Networks and UBNT products,

22  Defendant Kozumi's export from China and sale of counterfeit Ubiquiti goods in Latin America,

23  the Middle East, and East Asia, Defendant Kung's attempt to register UBIQUITI as a trademark

24  in the United States, Defendant Kozumi's design and manufacture of ZoneWave products using

25

26         [3] Defendants argue that Ubiquiti has attempted to rely on an unasserted breach of contract
    claim for jurisdictional purposes.  This is not correct.  The prior contractual relationship, which
    Defendant Hsu initiated, is relevant because the subsequent tortious events arose out of it.  It is, in
27  fact, part of the foundation for the Court's reasoning that the purposeful injection weighs in favor
    of the reasonableness of jurisdiction over Defendants Hsu and Kozumi.  (June 20 Order at 27.)
28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 12-CV-2582-CW
sf-3165430

10

1    Ubiquiti's AirOS® software, Defendant Hsu's attempt to extort millions of dollars from Ubiquiti,

2    and Defendant Hsu's targeting of Ubiquiti and its CEO in e-mails sent to distributors—all actions

3    expressly directed at a California company, which Defendants knew would suffer harm as a

4    result.  As a consequence of these actions, "the purposeful availment requirement for specific

5    jurisdiction is satisfied as to these Defendants."  (*Id*.)

6            Defendants ignore the overall context of the dispute, and focus almost entirely on who

7    initiated the emails in which Defendant Hsu attempted to extort money from Ubiquiti—a flawed

8    argument because the Ninth Circuit has held it sufficient to establish personal jurisdiction where a

9    defendant merely *responded* to a telephone call initiated from the forum state, because the

10   "communications were directed to Arizona, even though [defendant] did not initiate the contact."

11   *See Brainerd v. Governors of Univ. of Alberta*, 873 F.2d 1257, 1259-60 (9th Cir. 1989).  Thus,

12   Defendants quibble over the irrelevant.

13          *Panavision* and *Rio Properties* are instructive on the purposeful availment requirement.

14   In both cases, the defendants had passive websites and the courts looked for "something more" to

15   establish purposeful availment.  In *Panavision*, the court found the "something more" because

16   "Toeppen engaged in a scheme to register Panavision's trademarks as his domain names for the

17   purpose of extorting money from Panavision.  His conduct, as he knew it likely would, had the

18   effect of injuring Panavision in California where Panavision has its principal place of business

19   and where the movie and television industry is centered."  141 F.3d at 1322.  In *Rio Properties*,

20   the court found the "something more" because the defendant's "actions in Nevada, including its

21   radio and print advertisements, demonstrate an insistent marketing campaign directed toward

22   Nevada."  *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002).

23          Defendants in this case have registered and used Ubiquiti's trademarks knowing that their

24   acts would have the effect of injuring Ubiquiti in California, where Ubiquiti has its principal

25   place of business.  (McCollum Decl., Ex. H.)  They have sold counterfeit products, knowing that

26   these sales would injure Ubiquiti.  (Moore Decl., ¶ 29-38.)  They eventually also resorted to an

27   attempt to extort money from Ubiquiti when their counterfeiting scheme was uncovered.  (Jabbaz

28   Decl., Exs. A-E.)  These acts are more than sufficient to establish that Defendants have

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 12-CV-2582-CW
sf-3165430

11

1   purposefully availed themselves of jurisdiction in California, just as the defendant did in

2   *Panavision*.  Notably, Defendants do not even attempt to explain why they registered and

3   attempted to register trademarks which they knew to be Ubiquiti's.  They do not because there is

4   no explanation.

5          Instead, they cite two cases that have no bearing on the Court's analysis.  In *Facebook v.*

6   *Teachbook*, the defendant had registered a trademark that Facebook asserted infringed the

7   Facebook trademark—Teachbook.  Unlike here, the trademark was not identical to the plaintiff's,

8   there were no allegations that the defendant had any contact whatsoever with California, and the

9   defendant in fact "took purposeful steps to avoid the California market."  *Facebook Inc. v.*

10  *Teachbook.com, LLC*, No. CV 10-03654 RMW, 2011 WL 1672464, at \*4 (May 3, 2011).  Given

11  the facts, the court held that the plaintiff failed to identify "'something more' than foreseeable

12  effects in the future," which is not sufficient to establish personal jurisdiction.  The second case

13  cited by defendants, *Ajjarapu v. AE Biofuels, Inc.*, 728 F. Supp. 2d 1154 (D. Colo. 2010), is not

14  only not controlling because it is from the District of Colorado, it is also factually distinguishable.

15  It did not involve counterfeiting or extortion.  Instead, the court considered only a single three-

16  sentence response to an e-mail sent from Colorado, and found that that was insufficient to

17  establish specific jurisdiction.  *Ajjarapu*, 728 F. Supp. 2d at 1162.

18         Neither of these cases changes the conclusion that Defendants purposefully availed

19  themselves of personal jurisdiction in California.  Nothing counters the Court's previous finding

20  that Ubiquiti has demonstrated that Defendants personally directed their activities at California.

21         **B.      Ubiquiti's Claim Arises Out of Hsu's Activities in the Forum State**

22         To determine whether a claim arises out of forum-related activities, courts apply a "but

23  for" test.  *Panavision*, 141 F.3d at 1322; *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995)

24  (considering whether plaintiff's claims would have arisen but for Defendants contact with

25  California to establish the second requirement of specific jurisdiction).  Here, as in *Panavision*,

26  but for the actions of Defendants Hsu and Kozumi, the injury to Ubiquiti in California—the

27  damage to its reputation and goodwill, and the diminishment in the overall value of the company

28  (Moore Decl. ¶¶ 41-47)—would not have occurred.  (June 20 Order at 26.)

1    Defendants offer no facts that would alter the Court's finding. Instead, they merely

2  reiterate that Kozumi's manufacturing and distribution are based out of Southern Florida. The

3  base of their manufacturing and distribution operations, however, is not relevant, because, *but for*

4  Defendants' actions, Ubiquiti would not have suffered losses.

5    **C.    Jurisdiction Over Defendants Is Reasonable**

6    Defendants cannot overcome the Court's finding that "all the factors, including the

7  reasonableness factor, support jurisdiction of Hsu and Kozumi" and that "Ubiquiti is likely to

8  succeed in showing that (Defendants) are subject to personal jurisdiction in this forum." (June 20

9  Order at 29.) As shown below, the balance of reasonableness continues to weigh in favor of

10  Ubiquiti.

11    **Defendants Have Purposefully Interjected Themselves into California's Affairs.** The

12  Court has already found that this factor "weighs in favor of reasonableness of personal

13  jurisdiction over Hsu and Kozumi." (June 20 Order at 27.) The Court relied on Defendant Hsu's

14  e-mail to Ubiquiti's CEO stating that he was "in Bay Area these days," the distributorship

15  contract between Kozumi and Ubiquiti, and the e-mail exchange between Defendant and

16  Ubiquiti's CEO concerning the sale of the Argentinean UBIQUITI NETWORKS and logo

17  trademarks to Ubiquiti. *Id*. The Court further noted that Defendant Hsu, who purchased the

18  UBIQUITI NETWORKS and logo trademark in Argentina in his own name, is an officer of

19  Kozumi, and sent many of the e-mails to Ubiquiti's CEO personally, constituting personal

20  injection in his individual capacity. Defendants cite to no new facts and make the same

21  arguments that they made in their opposition to the Application for a Temporary Restraining

22  Order; arguments that have previously been considered and dismissed by the Court in its June 25

23  Order. This factor continues to weigh in Ubiquiti's favor.

24    **There is No Significant Burden on Defendants.** The mere fact that litigation is

25  inconvenient is not enough "[i]n this era of fax machines and discount air travel" to be

26  constitutionally unreasonable. *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990); *Sinatra v.*

27  *Nat'l Enquirer, Inc.,* 854 F.2d 1191, 1199 (9th Cir. 1988). Defendants argue that the burden to

28  defend this action is high because Kozumi is a small company with Defendant Hsu as its sole

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 12-CV-2582-CW
sf-3165430

13

1    shareholder and officer.  (Dkt. 40, Motion to Dismiss at 10.)  Defendants, however, do not present

2    the full picture.  Kozumi has eight international offices—located in eight different countries—

3    listed on its website.  (McCollum Decl., Ex. B.)  Defendant Hsu also operates three different

4    companies in Argentina—Syntronic S.A., TechDepot dba Connectis, and Omega Tech (Moore

5    Decl. ¶ 39), and recently traveled to Argentina to appear for a mediation.  (McCollum Decl. ¶ 2.)

6    Furthermore, as discussed above, Hsu readily offered to be available for meetings in the "Bay

7    Area" when "negotiating" with Ubiquiti's CEO only a few months ago.  (Jabbaz Decl., Ex. B).  A

8    company that can be managed from afar while Defendant Hsu is in Argentina will face no risk

9    from occasional trips to California in connection with this matter.  This factor weighs in favor of

10   Ubiquiti.

11          **There Exist Minimal, If Any, Conflict of Laws.**  The Court has carved out the pending

12   claims in Argentina from this case.  (June 20 Order at 20, 34.).  Therefore, Defendants' recitation

13   of potential conflicts with Argentinean law is no longer a valid concern.  Because the majority of

14   Ubiquiti's causes of action against Defendants are based on Defendants' violations of federal

15   laws, there are minimal, if any, conflicts between the laws of this Court and the laws of Florida,

16   Defendants' home jurisdiction.  *See Panavision* at 1323; *Rocawear Licensing, LLC v. Pacesetter*

17   *Apparel Group*, No. CV 06-3093 CJC (PLAx), 2006 WL 5878140, at *6 (S.D. Cal. Jul. 25, 2006)

18   (finding, in the counterfeit context, that "as Plaintiff's claims arise purely under federal law, and

19   the law of neither California nor Georgia are implicated, this Court's exercise of personal

20   jurisdiction would not conflict with Georgia's sovereignty.")  In fact, Defendants cite to no

21   conflicts of laws between California and Florida for claims asserted in this action.  This factor

22   also weighs in favor of Ubiquiti.

23          **California Has a Strong Interest in Adjudicating the Dispute.**  Ubiquiti is a company

24   with its principal place of business located in this forum, and "California has a strong interest in

25   providing a forum for its residents and citizens who are tortiously injured."  *Dole Food*, 303 F.3d

26   at 1115-16.  Defendants' argument that only Florida or Argentina has an interest in adjudicating

27   this dispute takes a myopic view of events—one that ignores the impact on Ubiquiti.  The fact

28   that Ubiquiti does business in jurisdictions throughout the world does not negate the fact that its

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 12-CV-2582-CW
sf-3165430

14

1   base and principal operations are in San Jose, California. *Id.* at 1116. This factor weighs strongly

2   in favor of Ubiquiti.

3          **California is the Forum Where the Most Efficient Judicial Resolution of the Dispute**

4   **Can Be Achieved.** Efficiency dictates resolution of this dispute in California. This factor

5   focuses on the likely location of evidence and witnesses. *Caruth v. Int'l Psychoanalytical Ass'n*,

6   59 F.3d 126, 129 (9th Cir. 1995). Defendants once again focus solely on Kozumi and Defendant

7   Hsu's location, failing entirely to acknowledge that Plaintiffs would have witnesses or evidence

8   to present in this dispute. (Dkt. 40, Motion to Dismiss at 11.) Many of Ubiquiti's likely

9   witnesses—including its Vice President of Marketing, its Chief Financial Officer, and Senior

10  Software Engineer—are located in California. These gentlemen are extremely busy running a

11  large, publicly traded company. The burdens on their time should not be downplayed in the

12  analysis—particularly when it is Defendants' counterfeiting activities that caused this action to be

13  filed. Most other witnesses, including Defendants' witnesses, appear to be located in China and

14  Latin America, not Florida, so a lawsuit in Florida would not prove more convenient for them.

15  Because no particular forum would be especially convenient for the Defendants, efficiency favors

16  the exercise of jurisdiction in California. *See Caruth*, 59 F.3d at 129 (finding California to be the

17  most efficient forum where evidence and witnesses were split between California and several

18  other locations).

19         **Ubiquiti Has a Strong Interest in Convenient and Effective Relief in California.**

20  Defendants concede that Ubiquiti's interest in "convenient and effective relief" favors jurisdiction

21  in California. (Dkt. 40, Motion to Dismiss at 11).

22         **California is the Most Appropriate Forum for Resolution of this Dispute.** Defendants

23  must first meet their burden to show that the present forum is unreasonable before suggesting an

24  alternate forum. *Sinatra*, 854 F.2d at 1201 ("[W]hether another reasonable forum exists becomes

25  an issue only when the forum state is shown to be unreasonable.") (citation omitted). Defendants

26  have not met their burden. Their argument that Ubiquiti is a public company with the resources

27  available to file this case in Florida has no bearing on the reasonableness of jurisdiction.

28

1   As Ubiquiti has shown, the current forum is not only reasonable, it is the most appropriate

2   forum for the resolution of this dispute.  Therefore, this Court may properly exercise personal

3   jurisdiction over Defendants.

4                                                    **CONCLUSION**

5        For the reasons stated above, Ubiquiti has made a prima facie showing that this Court has

6   personal jurisdiction over Defendants Hsu and Kozumi and, therefore, their motion to dismiss

7   should be denied.

8

9   Dated: July 3, 2012                    JENNIFER LEE TAYLOR
                                           COLETTE R. VERKUIL
                                           WHITNEY E. MCCOLLUM
10                                         MORRISON & FOERSTER LLP

11

12                                         By:  /s/ Jennifer Lee Taylor
                                                JENNIFER LEE TAYLOR
13
                                                Attorneys for Plaintiff,
14                                              UBIQUITI NETWORKS, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 12-CV-2582-CW                                                          16
sf-3165430